1  **MICHELLE BETANCOURT**
   California State Bar No. 215035
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
4  michelle_betancourt@fd.org

5  Attorneys for Mr. Rhett

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                    **(HONORABLE LARRY A. BURNS)**

11  UNITED STATES OF AMERICA,           )    Case No.:  07CR2956-LAB
                                        )
12            Plaintiff,                )    Date:    December 10, 2007
                                        )    Time:    12:00 p.m.
13  v.                                  )
                                        )
14  STEPHEN FRANCIS RHETT               )    **STATEMENT OF FACTS AND POINTS AND**
                                        )    **AUTHORITIES IN SUPPORT OF MOTIONS**
15            Defendant.                )
                                        )
16  _____

17                            **I.**

18                    **STATEMENT OF FACTS**

19         On September 23, 2007, at about 10:20 p.m., Mr. Stephen Francis Rhett and Ms. Janet Bernice

20  Forbes were driving in 1999 Ford F-250 that was towing a white trailer.  As they drove toward the San

21  Ysidro Port of Entry, they encountered Officer Fontanilla who was primary inspection officer assigned to

22  lane #22.  Officer Fontanilla questioned Mr. Rhett and Ms. Forbes and then proceeded to inspect the trailer.

23  Officer Fontanilla asked Mr. Rhett to step out of the truck and open the back gate of the trailer.  At the same

24  time, Officer Aguilar appeared to provide back up in the inspection.

25         Based on the inspection at primary, Officer Fontanilla decided to referred the truck and trailer to

26  secondary inspection for a further search. Mr. Rhett and Ms. Forbes were escorted to the secondary

27  inspection officer for further investigation.

28

1    While in secondary inspection, Officer Everett was asked to screen the trailer with his Narcotic

2    Detector Dog Winnie. Winnie alerted to the rear bumper.[1] After the alert, Officer Tobin visually screened

3    the trailer and discovered three saw horses, clothes, and a case of water. Officer Tobin also discovered

4    packages concealed under the flooring of the trailer. Officer Tobin removed 108 packages that weighed

5    508.10 kilograms. The substance within the packages tested positive for marijuana.

6    Three hours later, Mr. Rhett was placed in an interview room in the presence of two officers. He was

7    wearing a paper shirt and a mask that covered his mouth and nose. Mr. Rhett was also chained to the table

8    that separated him from the two agents. At about 1:15 a.m., Mr. Rhett signed a waiver of rights form.

9    However, throughout the advisal of his rights he was chained and remained this way throughout the

10   interrogation. Mr. Rhett was questioned for over an hour. He repeated denied knowledge of the drugs found

11   the trailer and eventually, terminated the interview because the agents continued to harass him to tell the

12   truth.

13   On October 30, 2007, the July 2007 Grand Jury panel issued an indictment charging Mr. Rhett and

14   Ms. Forbes with violating 21 U.S.C. §§ 952 and 960, Importation of Marijuana, and 21 U.S.C. §841(a)(1),

15   possession with intent to distribute, and 18 U.S.C. § 2, aiding and abetting. Mr. Rhett has pled not guilty

16   to these charges.

17   As of today, Mr. Rhett has only received 35 pages of discovery and one DVD. These motions

18   follow.

19   **II.**

20   **THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE**
     **INSTRUCTIONS PROVIDED TO THE GRAND JURY CANNOT BE RECONCILED WITH**
21   **THE FIFTH AMENDMENT**

22   The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions give to

23   grand jurors in the Southern District of California. See United States v. Navarro-Vargas 408 F.3d 1184

24   (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005). See also United States v. Cortes-Rivera, 454 F.3d

25   1038 (9th Cir. 2006). Mr. Rhett respectfully disagrees with the Navarro-Vargas majority opinion, and argues

26

27   _____

28   [1] Based on the discovery provided so far, however, it is unclear if it is the rear of the truck or of the trailer.

1   that this Court should dismiss the indictment based upon structural error for the reasons set forth in Judge

2   Hawkins' dissent in the en banc opinion, see <u>Navarro-Vargas</u>, 408 F.3d at 1210-11 (Hawkins, J., dissenting),

3   and Judge Kozinski's dissent in the three judge panel decision.  See <u>United States v. Navarro-Vargas</u>, 367

4   F.3d 896, 899-904 (9th Cir. 2004) (Kozinski, J., dissenting).

5       Further, Mr. Rhett respectfully requests that this Court order production of the transcript of the voir

6   dire and instruction of this grand jury panel.  The entirety of the instructions and voir dire of the grand jury

7   are important in this case because the grand jury receives instructions throughout the voir dire process.  Once

8   these transcripts become available to Mr. Rhett he may request to supplement these motions.  See <u>United</u>

9   <u>States v. Alter</u>, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973) ("[t]he proceedings before the grand jury are secret,

10   but the ground rules by which the grand jury conducts those proceedings are not.").

11                                  **III.**

12              **<u>MOTION TO SUPPRESS STATEMENTS</u>**

13       Mr. Rhett  moves to suppress any statements made at the time of his arrest on the grounds that his

14   <u>Miranda</u> waiver was not knowing, intelligent, and voluntary.  Moreover, Mr. Rhett moves to suppress any

15   other statements made on the grounds that those statements were not made voluntarily.

16   **A.**    **<u>The Government must demonstrate compliance with <i>Miranda</i>.</u>**

17       In order for any statements made by Mr. Rhett  to be admissible against him, the government must

18   demonstrate that they were obtained in compliance with the <u>Miranda</u> decision.

19       **1.**    **<u>Mr. Rhett's Waiver Must Be Voluntary, Knowing, and Intelligent.</u>**

20       Complete discovery has not been received in this case. Therefore, the question remains whether

21   Mr. Rhett's waiver was voluntary, knowing, and intelligent. See <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218

22   (1973).  When interrogation continues without the presence of an attorney, and a statement results, the

23   government has a heavy burden to demonstrate that the defendant has intelligently and voluntarily waived

24   his privilege against self-incrimination.  <u>Miranda</u>, 384 U.S. at 475.  The court must indulge every reasonable

25   presumption against waiver of fundamental constitutional rights, so the burden on the government is great.

26   <u>United States v. Heldt</u>, 745 F. 2d 1275, 1277 (9th Cir. 1984).

27       In determining whether a waiver is voluntary, knowing, and intelligent, the court looks to the totality

28   of the circumstances surrounding the case.  <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981); <u>United States v.</u>

1  Garibay, 143 F.3d 534 (9th Cir. 1998).  The Ninth Circuit has held that determination of the validity of a

2  Miranda waiver requires a two prong analysis:  the waiver must be both (1) voluntary and (2) knowing and

3  intelligent.  Derrick v. Peterson, 924 F. 2d 813 (9th Cir. 1990).  The second prong requires an inquiry into

4  whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and

5  the consequences of the decision to abandon it."  Id. at 820-821 (quoting Colorado v. Spring, 479 U.S. 564,

6  573 (1987)).  Not only must the waiver be uncoerced, then, it must also involve a "requisite level of

7  comprehension" before a court may conclude that Miranda rights have been legitimately waived.     Id.

8  (quoting Colorado v. Spring, 479 U.S. at 573).

9      Unless and until Miranda warnings and a knowing and intelligent waiver are demonstrated by the

10  prosecution, no evidence obtained as a result of the interrogation can be used against the defendant.

11  Miranda, 384 U.S. at 479.  The government in this case must prove that Mr. Rhett waived his rights

12  intelligently and voluntarily.  Mr. Rhett disputes any allegation that his waiver was knowing, intelligent, and

13  voluntarily.

14      **2.     Mr. Rhett's Statements Must be Voluntary.**

15      Even if Mr. Rhett's statements were made after a voluntary, knowing, and intelligent waiver, they

16  must have been made voluntarily, or they must be suppressed.  The Supreme Court has held that even where

17  the procedural safeguards of Miranda are satisfied, a defendant in a criminal case is deprived of due process

18  of law if his conviction is founded on involuntary statements.  Arizona v. Fulminante, 499 U.S. 279 (1991);

19  Jackson v. Denno, 378 U.S. 368, 387 (1964); see also United States v. Davidson, 768 F.2d 1266, 1269 (11th

20  Cir. 1985)("an accused is deprived of due process if his conviction rests wholly or partially upon an

21  involuntary confession, even if the statement is true, and even if there is ample independent evidence of

22  guilt.").  The government has the burden of proving that statements are voluntary by a preponderance of the

23  evidence.  Lego v. Twomey, 404 U.S. 477, 483 (1972).  An accused's confession must result from an

24  "independent and informed choice of his own free will, possessing the capability to do so, his will not being

25  overborne by the pressures and circumstances swirling around him."  Martin v. Wainwright, 770 F. 2d 918,

26  924 (11th Cir. 1985), modified, 781 F. 2d 185 (11th Cir.)  (quotations omitted).

27      To be considered voluntary, a statement must be the product of a rational intellect and a free will.

28  Blackburn v. Alabama, 361 U.S. 199, 208 (1960).  In determining whether a defendant's will was overborne

in a particular case, the court must consider the totality of the circumstances. <u>Schneckloth v</u>. <u>Bustamonte</u>, 412 U.S. 218, 226 (1973).[2] A confession is deemed involuntary not only if coerced by physical intimidation, but also if achieved through psychological pressure. "The test is whether the confession was 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" <u>Hutto v. Ross</u>, 429 U.S. 28, 30 (1976) (quoting <u>Bram v. United States</u>, 168 U.S. 532, 542-43 (1897)); <u>accord</u>, <u>United States v. Tingle</u>, 658 F.2d 1332, 1335 (9th Cir. 1981). Here, Mr. Rhett's statements were involuntary.  An evidentiary hearing in this case will reveal this case is indistinguishable from <u>United States v. Tingle</u>, 658 F.2d 1332 (9th Cir. 1981).  Accordingly, suppression of Mr. Rhett's statements is required.

**B.     <u>This Court Must Conduct an Evidentiary Hearing.</u>**

Under 18 U.S.C. § 3501(a), this Court is required to determine, outside the presence of the jury, whether any statements made by Mr. Rhett are voluntary.  In addition, section 3501(b) requires this Court to consider various enumerated factors, including whether Mr. Rhett understood the nature of the charges against his and whether he understood his rights. Without evidence, this Court cannot adequately consider these statutorily mandated factors.

Moreover, section 3501(a) requires this Court to make a factual determination.  Where a factual determination is required, courts are obligated to make factual findings by Fed. R. Crim. P. 12.  <u>See</u> <u>United States v. Prieto-Villa</u>, 910 F.2d 601, 606-10 (9th Cir. 1990).  Because "'suppression hearings are often as important as the trial itself,'" <u>Id.</u> at 610 (quoting <u>Waller v. Georgia</u>, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.

//

//

//

---

[2] Among the factors which are considered are the youth of the accused, his lack of education, his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of the detention, the repeated and prolonged nature of questioning, and the use of physical punishment such as deprivation of food or sleep.

**IV.**

**MOTION TO PRESERVE AND INSPECT EVIDENCE**

Mr. Rhett requests the preservation of all physical evidence in this case. This includes any evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government (or its private contractors) in this case. See United States v. Riley, 189 F.3d 802, 806-808 (9th Cir.1999). This request includes, but is not limited to: (1) the firearms found at the time of the arrest; (2) the alleged contraband found in the glove box and front seat, including samples used to conduct tests; (3) the containers or packaging within which the contraband was discovered; (4) the results of any fingerprint analysis; (5) the defendant's personal effects; (6) any videotapes capturing Mr. Rhett in this matter; (7) recorded communications made by the government related to the above captioned case, specifically radio communications between officers in the field; (8) recordings made by the Remote Video Surveillance System (RVSS); and, (9) the vehicle seized pursuant to the arrest. Mr. Rhett requests that government counsel be ordered to notify the agencies and private contractors with custody of such evidence be informed of the Court's preservation order.

Further, Mr. Rhett requests an order granting defense counsel and/or their investigators access to the alleged contraband and other evidence for the purposes of investigation, including inspection, photographing, and re-weighing of the alleged contraband if necessary. Fed. R. Crim. P. 16(a)(1)(C). A proposed Order is attached for the convenience of the Court.

Mr. Rhett requests that the evidence in the case be preserved throughout the pendency of the case, including any appeals.

**V.**

**MOTION TO COMPEL DISCOVERY**

Mr. Rhett moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir.), cert. denied, 493 U.S. 858 (1989).

(1) The Defendant's Statements. The Government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the

defendant which the Government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the Government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the Government agent; any response to any <u>Miranda</u> warnings which may have been given to the defendant; as well as any other statements by the defendant.  Fed. R. Crim. P. 16(a)(1)(A).  The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal <u>all</u> the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2)  <u>Arrest Reports, Notes and Dispatch Tapes</u>.  The defendant also specifically requests the Government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding his arrest or any questioning.  This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained.  Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant.  <u>See</u> Fed. R. Crim. P. 16(a)(1)(B) and (c), Fed. R. Crim. P. 26.2 and 12(I).

(3)  <u>Brady Material</u>.  The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the Government's case.  Under <u>Brady</u>, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused.  <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

(4)  <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>.  The Government must produce this information under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  This request includes any cooperation or attempted cooperation by the defendant as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines.  The defendant also requests any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant to any other application of the Guidelines.

1    (5) The Defendant's Prior Record. The defendant requests disclosure of his prior record. Fed. R.

2    Crim. P. 16(a)(1)(B).

3    (6) Any Proposed 404(b) Evidence. The government must produce evidence of prior similar acts

4    under Fed. R. Crim. P. 16(a)(1)(c) and Fed. R. Evid. 404(b) and 609. In addition, under Rule 404(b), "upon

5    request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the

6    general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial.

7    The defendant requests that such notice be given three (3) weeks before trial in order to give the defense time

8    to adequately investigate and prepare for trial.

9    (7) Evidence Seized. The defendant requests production of evidence seized as a result of any search,

10    either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(c).

11    (8) Tangible Objects. The defendant requests the opportunity to inspect and copy as well as test, if

12    necessary, all other documents and tangible objects, including photographs, books, papers, documents,

13    fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended

14    for use in the Government's case-in-chief or were obtained from or belong to the defendant. Fed. R. Crim.

15    P. 16(a)(2)(c).

16    (9) Evidence of Bias or Motive to Lie. The defendant requests any evidence that any prospective

17    Government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his

18    or his testimony.

19    (10) Impeachment Evidence. The defendant requests any evidence that any prospective Government

20    witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness

21    has made a statement favorable to the defendant. See Fed R. Evid. 608, 609 and 613; Brady v. Maryland,

22    supra.

23    (11) Evidence of Criminal Investigation of Any Government Witness. The defendant requests any

24    evidence that any prospective witness is under investigation by federal, state or local authorities for any

25    criminal conduct.

26    (12) Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling. The

27    defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show

28    that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and

1  any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an
2  alcoholic.

3      (13)  <u>Witness Addresses</u>.  The defendant requests the name and last known address of each
4  prospective Government witness.  The defendant also requests the name and last known address of every
5  witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will
6  <u>not</u> be called as a Government witness.

7      (14)  <u>Name of Witnesses Favorable to the Defendant</u>.  The defendant requests the name of any
8  witness who made an arguably favorable statement concerning the defendant or who could not identify him
9  who was unsure of his identity, or participation in the crime charged.

10     (15)  <u>Statements Relevant to the Defense</u>.  The defendant requests disclosure of any statement
11 relevant to any possible defense or contention that he might assert.

12     (16)  <u>Jencks Act Material</u>.  The defendant requests production in advance of trial of all material,
13 including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500.
14 Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks
15 material.  A verbal acknowledgment that "rough" notes constitute an accurate account of the witness'
16 interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1).  <u>Campbell v.</u>
17 <u>United States</u>, 373 U.S. 487, 490-92 (1963).  In <u>United States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) the
18 Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes
19 are then subject to the Jencks Act.

20     (17)  <u>Giglio Information</u>.  Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant
21 requests all statements and/or promises, express or implied, made to any Government witnesses, in exchange
22 for their testimony in this case, and all other information which could arguably be used for the impeachment
23 of any Government witnesses.

24     (18)  <u>Agreements Between the Government and Witnesses</u>.  The defendant requests discovery
25 regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future
26 compensation, or any other kind of agreement or understanding, including any implicit understanding
27 relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government
28 witness and the Government (federal, state and/or local).  This request also includes any discussion with a

07CR2956-LAB

1  potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain,

2  even if no bargain was made, or the advice not followed.

3      (19)  <u>Informants and Cooperating Witnesses</u>.  The defendant requests disclosure of the names and

4  addresses of all informants or cooperating witnesses used or to be used in this case, and in particular,

5  disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime

6  charged against Mr. Rhett.  The Government must disclose the informant's identity and location, as well as

7  disclose the existence of any other percipient witness unknown or unknowable to the defense.  <u>Roviaro v.</u>

8  <u>United States</u>, 353 U.S. 53, 61-62 (1957).  The Government must disclose any information derived from

9  informants which exculpates or tends to exculpate the defendant.

10     (20)  <u>Bias by Informants or Cooperating Witnesses</u>.  The defendant requests disclosure of any

11 information indicating bias on the part of any informant or cooperating witness.  <u>Giglio v. United States</u>, 405

12 U.S. 150 (1972).  Such information would include what, if any, inducements, favors, payments or threats

13 were made to the witness to secure cooperation with the authorities.

14     (21)  <u>Government Examination of Law Enforcement Personnel Files</u>.  Mr. Rhett requests that the

15 Government examine the personnel files and any other files within its custody, care or control, or which

16 could be obtained by the government, for all testifying witnesses, including testifying officers.

17 Mr. Maldonado-Perez requests that these files be reviewed by the Government attorney for evidence of

18 perjurious conduct or other like dishonesty, or any other material relevant to impeachment, or any

19 information that is exculpatory, pursuant to its duty under <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.

20 1991).  The obligation to examine files arises by virtue of the defense making a demand for their review:

21 the Ninth Circuit in <u>Henthorn</u> remanded for <u>in camera</u> review of the agents' files because the government

22 failed to examine the files of agents who testified at trial.  This Court should therefore order the Government

23 to review all such files for all testifying witnesses and turn over any material relevant to impeachment or that

24 is exculpatory to Mr. Rhett prior to trial.  Mr. Rhett specifically requests that the prosecutor, not the law

25 enforcement officers, review the files in this case.  The duty to review the files, under <u>Henthorn</u>, should be

26 the prosecutor's.  Only the prosecutor has the legal knowledge and ethical obligations to fully comply with

27 this request.

28

07CR2956-LAB

1       (22) <u>Expert Summaries</u>.  Defendant requests written summaries and results of any experiments of

2  all expert testimony that the government intends to present under Federal Rules of Evidence 702, 703 or 705

3  during its case in chief, written summaries of the bases for each expert's opinion, and written summaries

4  of the experts' qualifications.  Fed. R. Crim. P. 16(a)(1)(E).  This request includes, but is not limited to,

5  fingerprint expert testimony.

6       (23) <u>Residual Request</u>.  Mr. Rhett intends by this discovery motion to invoke his rights to discovery

7  to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws

8  of the United States.  This request specifically includes all subsections of Rule 16.  Mr. Rhett requests that

9  the Government provide him and his attorney with the above requested material sufficiently in advance of

10  trial to avoid unnecessary delay prior to cross-examination.

11

**VI.**

12

**<u>MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS</u>**

13       Defense counsel requests leave to file further motions and notices of defense based upon information

14  gained in the discovery process.  To date, counsel has not received **any** discovery from the government in

15  this matter.

16

**VII.**

17

**<u>CONCLUSION</u>**

18       For these and all the foregoing reasons, the defendant, Mr. Rhett, respectfully requests that this court

19  grant his motions and grant any and all other relief deemed proper and fair.

20                    Respectfully submitted,

21

22  DATED: November 19, 2007        */s/ Michelle Betancourt*

                                       **MICHELLE BETANCOURT**

23                                   Federal Defenders of San Diego, Inc.

                                   Attorneys for Mr. Rhett

24                                   E-mail:  michelle_betancourt@fd.org

25

26

27

28

11
