KAREN P. HEWITT
United States Attorney
LAWRENCE A. CASPER
Assistant U.S. Attorney
California State Bar No. 235110
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone No.: (619) 557-7455
Facsimile No.:  (619) 235-2757
Lawrence.Casper@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| | Criminal Case No.  07CR2956-LAB |
| | District Judge: Hon. Larry A. Burns |
| | Courtroom: 9 (Second Floor) |
| UNITED STATES OF AMERICA, | Date: December 10, 2007 |
| Plaintiff, | Time: 2:00 p.m. |
| v. | UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO: |
| STEPHEN FRANCIS RHETT, | (1) DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTION; |
| Defendant. | (2) SUPPRESS DEFENDANT'S STATEMENTS; (3) COMPEL DISCOVERY AND PRESERVE EVIDENCE; and (4) GRANT LEAVE TO FILE FURTHER MOTIONS |
| | TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES AND GOVERNMENT'S: (1) MOTION FOR RECIPROCAL DISCOVERY |

Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P.

HEWITT, United States Attorney, and LAWRENCE A. CASPER, Assistant U.S. Attorney, hereby

files its Response and Opposition to the above-described motions filed by Defendant Stephen

Francis Rhett (Defendant) and its Motion For Reciprocal Discovery.  This Response in Opposition

and Government motion is based upon the files and records of this case.

# I

## STATEMENT OF FACTS

### A.     Statement of the Case

A federal grand jury on October 30, 2007 returned a two-count Indictment charging Defendants Stephen Francis Rhett and Janet Bernice Forbes with: (1) importing approximately 508.10 kilograms (1117.82 pounds) of marijuana, in violation of 21 U.S.C. §§ 952 and 960, and (2) possessing with intent to distribute that same amount of marijuana, in violation of 21 U.S.C. § 841(a)(1).  Defendant entered a not guilty plea before the Magistrate Judge on that same day.

### B.     Statement of Facts

#### 1.     Primary Inspection: Defendant Rhett's Nervousness

On September 23, 2007, at approximately 10:20 p.m., Defendants Stephen Francis Rhett (Rhett) and Janice Bernice Forbes (Forbes) entered the United States from Mexico through the San Ysidro Port of Entry in a white 1999 Ford F-250 with California license plate (3QOS602) towing a trailer also bearing California license plates (4JL1558).  Defendant Rhett was the driver and Defendant Forbes was the front seat passenger.

At primary inspection, Defendant Rhett told Customs and Border Protection Officer (CBPO) Fontanilla that they were not bringing anything from Mexico and that, instead, they went to Mexico to deliver building materials as donations to Mexico and that the "trailer is empty now."  At CBPO Fontanilla's request, Rhett opened the trailer.  Upon entering the trailer, CBPO Fontanilla noticed a new plywood floor in the trailer.  CBPO Fontanilla tapped the floor with his flashlight and it sounded soft but solid.  He also noticed that the underside of the floor appeared to have a space discrepancy.  CBPO Aguilar followed CBPO Fontanilla to back him up at the rear of the trailer.  CBPO again asked Defendant Rhett what he was bringing back from Mexico.  Rhett responded, "Nothing, sir, is there any problem?"  CBPO Aguilar began to unscrew one screw on the floor, pried the corner of the floor and noticed a space discrepancy and discovered blue packages.  While CBPO Aguilar was removing one of the wooden floor panels, he noticed Defendant Rhett become so nervous that he proceeded to defacate on himself.  Defendants Rhett and Forbes were escorted to the security office and the vehicle and trailer were driven to secondary for further inspection.

2.     **Secondary Inspection: Discovery of 508.10 Kilograms of Marijuana**

Upon further examination by CBPO Everett and her narcotics detector dog, the dog alerted to the presence of a narcotics odor coming from the rear bumper area of the trailer. Upon secondary inspection by CBPO John Tobin, he observed that there were three saw horses, clothes and a case of water in the trailer. He also observed that the flooring was clean. CBPO Tobin unscrewed the flooring, lifted it to reveal the compartment and observed packages. CBPO Tobin probed one package, which field tested positive for marijuana. Defendants were then placed under arrest. A total of 108 packages were then removed from the vehicle and 508.10 kilograms of marijuana (approximately 1117.82 pounds) were seized.

3.     **Defendant Stephen Rhett's Post-Miranda Statement**

At approximately 1:00 a.m. on September 24, 2007, Defendant Rhett was read his Miranda warnings, acknowledged his understanding and waived them orally and in writing and then provided a videotaped statement to ICE Special Agent Daniel Duff; the statement was witnessed by ICE Special Agent Christian Alva. Defendant Rhett, who, as discussed above, defecated on himself, informed agents that he had certain medical conditions; accordingly, before the interview the agents took appropriate precautions and provided Defendant Rhett with a paper shirt and mask. Defendant Rhett, who had $16 in his possession, stated he was unemployed and homeless; he did not have a driver's license in his possession. Defendant claimed that he was approached on the streets by "Jen," a white female and an unidentified male, "Robert", who claimed to be from First Presbyterian Church in San Diego. Rhett claimed that they offered him $100 each way to transport building materials to Tijuana, Mexico. Rhett stated that he agreed to transport the materials for payment.

Defendant Rhett claimed he received the F-250 and trailer at the First Presbyterian somewhere in downtown San Diego but claimed he could not recall the address or location. Upon receiving the truck, Rhett claims he drove directly into Mexico where he met with an unknown man, whom he followed to the "Flamingo Hotel" in Tijuana. Rhett claimed he stayed the night in the hotel and met with "Jen" and a Hispanic female, whom he identified as "Silvia", the following morning at approximately 6:00 a.m. On the morning of his arrest, Defendant Rhett met with

"Felipe" who is the father of "Jen." Rhett claimed "Felipe" offered him $2,000 to smuggle four undocumented aliens into the United States.

Rhett stated that, after crossing the border, he was to drive the vehicle and trailer to Temecula and park them at a gas station parking lot off of the I-15 and California Oaks. Rhett claimed he did not know his passenger. He claimed to have observed the trailer get loaded and unloaded with building materials. Rhett admitted he was suspicious but denied having knowledge of the marijuana in the trailer. "Jen's" direct connect telephone number was obtained from Defendant Rhett's cellular telephone. The interview concluded at approximately 1:54 a.m., after Rhett requested to consult with an attorney.

### 4.    Defendant Janice Bernice Forbes' Post-<u>Miranda</u> Statement

At approximately 3:00 a.m. on September 24, 2007 Defendant Janice Bernice Forbes was interviewed in English by ICE Special Agent Duff and witnessed by Special Agent Alva. Defendant Forbes stated that she had been unemployed for four years and that she is transient but has a San Diego mailing address, which she provided. Forbes had $6.00 in her possession. Defendant was read her <u>Miranda</u> rights in English, acknowledged she understood her rights and waived them orally and in writing before providing a videotaped statement.

Forbes stated that she was on methadone for heroin addiction and that she frequents Tijuana often to receive her methadone treatments. She claimed that, on the morning of her arrest, she went to Tijuana, Mexico to receive one of her treatments. She stated that, after receiving her treatment, she was approached by "Felipe," who offered to pay her $500 to be a passenger in a vehicle that was to cross illegal aliens into the United States. She stated that she was picked up by a taxi and driven to a house in Colonia Libertad, Tijuana, Mexico. Upon her arrival, she observed approximately six to eight people and met Defendant Rhett there. She stated that she spent approximately twenty minutes at the house and then left with Rhett and an unknown Hispanic male named "Jimmy." She stated that they traveled approximately 10-15 minutes to a gas station possibly in Rosarito, Mexico, where the white F-250 and trailer were located. Forbes stated that Defendant Rhett told her he had made seven previous trips across the border but that this was his first time working for this family.

1       Upon receiving the F-250 and trailer, Rhett got into the vehicle with her and Jimmy; Jimmy

2  rode with them for a little while until Jimmy told Rhett that it was time for Jimmy to get out.  Forbes

3  stated that Defendant Rhett was receiving numerous Nextel calls from a woman identified as "Jen."

4  Forbes said "Jen" was requesting that Rhett call her back after they crossed the border.  While they

5  were in line to enter the United States at the port of entry, Jen was calling Rhett every two minutes.

6  She also claimed to have heard Jen tell Rhett that he needed to move over a few lanes to cross or

7  they would be sent to secondary; they were, however, unable to change lanes because of the trailer.

8  Forbes said that Rhett told her that the previous time he crossed he needed help from the previous

9  female passenger to lower the trailer gate.

10       Defendant Forbes claimed she thought she was transporting undocumented aliens and

11  believed she would receive her $500 payment in Mexico.  She denied knowledge of the marijuana

12  and the interview concluded at approximately 4:00 a.m.

13             **5.**    **Criminal History of Defendants**

14       Both Defendants have lengthy criminal histories, including multiple prior arrests and/or

15  convictions for narcotics related offenses.

16                          **II**

17                    **ARGUMENT**

18    **A.**      **THE GRAND JURORS WERE PROPERLY INSTRUCTED**

19       Defendant moves to dismiss the indictment "due to the improper instructions given to the

20  grand jury" and to adopt Judge Hawkins' dissenting opinion in <u>United States v. Navarro-Vargas</u>, 408

21  F.3d 1184 (9th Cir. 2005) (en banc).  The controlling precedents here, of course, are the majority

22  opinions, not the dissents.  These decisions affirm that the standard grand jury instructions do not

23  infringe on the grand jury's independent exercise of its discretion.  Thus, this motion should be

24  denied. [1]/

25       Defendant also requests transcripts of the grand jury voir dire proceedings and empanelment

26  instructions.  The Government does not oppose a release by the Court of the Grand Jury

27

28       [1]    The United States reserves the right to supplement this response in the event that Defendant is permitted to supplement his motion as suggested in his memorandum.

empanelment instructions on the condition that all information is redacted that would disclose, or lead to the disclosure of, the identity of any prospective or selected grand juror. See <u>United States v. Alter</u>, 482 F.2d 1016, n. 21 (9th Cir. 1973) ("The proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not.").

The Government does, however, oppose Defendant's request for production of the transcript of the grand jury voir dire proceedings. Defendant attempts to justify this request by asserting that the "entirety of the instructions and voir dire of the grand jury are important in this case because the grand jury receives instructions throughout the voir dire process." See Defendant Rhett's Motion at p. 3. The Government submits that this assertion alone, even if correct, is insufficient to trigger disclosure of the voir dire proceedings. This is so because the comments made by the court during voir dire do not constitute the actual and final charge to the empaneled grand jury and defendant has made no showing that the actual and final charge was flawed. In determining whether to release voir dire transcripts, this Court should weigh Defendant's interest in access to the material against the deep-rooted societal interest in maintaining the secrecy of grand jury proceedings.

The Supreme Court has "consistently recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." <u>Douglas Oil Company of California v. Petrol Stops Northwest</u>, 441 U.S. 211, 218 (1979). "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only the material so needed." Id. at 222. Moreover, "in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." <u>Id</u>.

Disclosure of the voir dire of the grand jury in this case would, unless redacted, reveal the identities of the grand jurors. One of the recognized justifications for grand jury secrecy is "to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors". <u>Douglas Oil</u>, 441 U.S. at 219 n. 10. That justification was applied by the Ninth Circuit in <u>In Re Grand Jury (for Anchorage, Alaska)</u>, 674

F.2d 778 (9th Cir. 1984).  In that case, appellants had sought, among other things, roll sheets reflecting the composition of a special grand jury, attendance records of grand jurors and any substitutions.  Id. at 780.  The Ninth Circuit opined that "[i]t would be reasonable to hold that this element of the request  runs afoul of grand jury secrecy, in spite of the fact that it seems not to fall within the scope of the Rule 6(e) language."  The Ninth Circuit declined to issue a black-letter ruling on the scope of the secrecy protection, however, deferring to the district court the fact-specific inquiry into "whether the[] disclosure [of the materials] would, in fact, threaten legitimate interests of the government, the grand jurors, or any other persons connected with the grand jury proceedings."  Id. at 782.

So should it be in this case: this Court should determine whether disclosure of the voir dire would threaten legitimate interests of the government, grand jurors, or grand jury proceedings.  The government believes that it would.  Disclosure of an unredacted voir dire transcript would reveal the identities of grand jurors and clearly contravene society's interest in insuring the secrecy of grand jury proceedings.   The lesson of the Anchorage case is that while it is within the power of the district courts to order a release ministerial records of the grand jury, such an order must follow upon a particularized factual inquiry into the likely affects of disclosure, and the moving party's specific interest in disclosure.

 In order to for Defendant to obtain a transcript of the grand jury voir he must show a particularized need.   Defendant has demonstrated no need at all for a transcript of the voir dire proceedings but has merely embarked on a fishing expedition.    Defendant's motion for release of the grand jury voir dire must therefore be denied.

## B.    DEFENDANT'S MOTION TO SUPPRESS SHOULD BE DENIED

Defendant moves to suppress statements and requests that the Government prove that all statements were voluntarily made, and made after a knowing and intelligent Miranda waiver.  Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine whether Defendant's statements were voluntary.  Defendant's motion to suppress statements should be denied without an evidentiary hearing because he failed to allege a specific factual dispute, and failed to support his contentions with a sworn declaration as required by Crim LR 47.1(g).

1              **1.      Knowing, Intelligent, and Voluntary Miranda Waiver**

2              A statement made in response to custodial interrogation is admissible under Miranda v.

3      Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates

4      that the statement was made after an advisement of Miranda rights, and was not elicited by improper

5      coercion.  See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence

6      standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should

7      not be found in the "absence of police overreaching").

8              A valid Miranda waiver depends on the totality of the circumstances, including  the

9      background, experience, and conduct of the defendant.  North Carolina v. Butler, 441 U.S. 369,

10     374-75 (1979).   To be knowing and intelligent, "the waiver must have been made with a full

11     awareness of both the nature of the right being abandoned and the consequences of the decision to

12     abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The Government bears the burden of

13     establishing the existence of  a valid Miranda waiver. North Carolina v. Butler, 441 U.S. at 373.  In

14     assessing the validity of a defendant's Miranda waiver, this Courts should analyze the totality of the

15     circumstances surrounding the interrogations.  See Moran v. Burbine, 475 U.S. at 421.   Factors

16     commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d 1070,

17     1074-75 (9th Cir. 1998) (en banc) (valid waiver because the 17 year old defendant did not have

18     trouble understanding questions, gave coherent answers, and did not ask officers to notify parents),

19     (2) the defendant's familiarity with the criminal justice system (see United States v. Williams, 291

20     F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was familiar with the

21     criminal justice system from past encounters), (3) the explicitness of the Miranda waiver (see United

22     States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda waiver is "strong

23     evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000)

24     (waiver valid where Miranda rights were read to defendant twice and defendant signed a written

25     waiver), and (4) the time lapse between the reading of the Miranda warnings and the interrogation

26     or confession.  See Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995) (valid waiver despite

27     15-hour delay between Miranda warnings and interview).

28

Here, the ICE agents advised Defendant of his <u>Miranda</u> rights prior to any post-arrest custodial interrogation. As evidenced by the digital video recording, Defendant was advised of his <u>Miranda</u> rights before the interrogation. Defendant orally agreed to waive his <u>Miranda</u> rights and agreed to answer questions. Ultimately, during the interview, Defendant chose to assert his right to confer with counsel and the interview was promptly terminated; thus, it is evident that his earlier waiver was knowing, intelligent and voluntary. Based on the totality of the circumstances, Defendant's statements should not be suppressed.

### 2.     **Defendant's Statements Were Voluntary**

The inquiry into the voluntariness of statements is the same as the inquiry into the voluntariness of a waiver of <u>Miranda</u> rights. <u>See</u> <u>Derrick v. Peterson</u>, 924 F.2d 813, 820 (9th Cir.1990). Courts look to the totality of the circumstances to determine whether the statements were "the product of free and deliberate choice rather than coercion or improper inducement." <u>United States v. Doe</u>, 155 F.3d 1070, 1074(9th Cir. 1998)(<u>en</u> <u>banc</u>).

A confession is involuntary if "coerced either by physical intimidation or psychological pressure." <u>United States v. Crawford</u>, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting <u>United States v. Haswood</u>, 350 F.3d 1024, 1027 (9th Cir. 2003)). In determining whether a defendant's confession was voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.'" <u>Clark v. Murphy</u>, 331 F.3d 1062, 1072 (9th Cir.), <u>cert. denied</u>, _ U.S. _, 124 S. Ct. 446 (2003) (<u>quoting</u> <u>Haynes v. Washington</u>, 373 U.S. 503, 513 (1963)). Psychological coercion invokes no per se rule. <u>United States v. Miller</u>, 984 F.2d 1028, 1030 (9th Cir. 1993). Therefore, the Court must "consider the totality of the circumstances involved and their effect upon the will of the defendant." <u>Id.</u> at 1031 (<u>citing</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226-27 (1973)).

In determining the issue of voluntariness, this Court should consider the five factors under 18 U.S.C. § 3501(b). <u>United States v. Andaverde</u>, 64 F.3d 1305, 1311 (9th Cir. 1995). These five factors include: (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he or she was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he or she was

not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his or her right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. 18 U.S.C. § 3501(b). All five statutory factors under 18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily made. See Andaverde, 64 F.3d at 1313.

As discussed above, Defendant was read his Miranda rights and explicitly stated that he understood his Miranda rights and agreed to waive those rights. See United States v. Gamez, 301 F.3d 1138, 1144 (9th Cir. 2002). Defendant's statements were not the product of physical intimidation or psychological pressure of any kind by any Government agent. There is no evidence that Defendant's will was overborne at the time of his statements. Consequently, Defendant's motion to suppress his statements as involuntarily given should be denied.

### 3.     Defendant's Motion Should Be Denied Without An Evidentiary Hearing

This Court can and should deny (without prejudice) Defendant's motion to suppress statements without an evidentiary hearing. First, under Ninth Circuit precedent as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing.").

Second, an evidentiary hearing is not required if a defendant's motion to suppress and supporting declarations or affidavits fail to allege a specific factual dispute. See United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (an evidentiary hearing is required "if the moving papers are definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of [material] fact . . . are at issue"); see United States v. Howell, 231 F.3d 616, 620-23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); United States v. Batiste, 868 F.2d

1089, 1093 (9th Cir. 1989) (District Court is not required to hold an evidentiary hearing where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (motion to suppress "akin to boilerplate motions that lay no factual foundation" and unsworn representations of counsel were "too indefinite and conjectural to require the government to respond").

Defendant failed to specifically identify the statements that he seeks to suppress or allege any specific factual or legal dispute regarding the admissibility of the statements. Defendant did not allege that the ICE agents failed to advise Defendant of his Miranda rights, that the Miranda rights provided were somehow defective, that his Miranda waivers were not knowingly, intelligently, or voluntarily made, or that the statements were involuntarily coerced. Defendant's motion to suppress is pure boilerplate and lacks sufficient definiteness, clarity, and specificity to enable the Court to rule or allow the Government to prepare for any motion to suppress statements.

## C. DEFENDANT'S MOTION TO PRESERVE AND INSPECT EVIDENCE

After issuance of a an order from the Court, the United States will preserve all evidence to which Defendant is entitled to pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence. Moreover, the United States objects to Defendant's proposed order to preserve and inspect evidence which calls for the Government to make available for inspection and photographing "firearms" of which there are none in this case. Similarly, the proposed order calls for the United States to preserve "radio transmissions and surveillance videos"; the United States is unaware of any such transmissions or video in this case. Further, the proposed preservation order is for an indeterminate period and does not reasonably describe the items to be preserved and/or inspected.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The

1    United States has made the evidence available to Defendant and Defendant's investigators and will

2    comply with any request for inspection.

3

4    ### D.    THE GOVERNMENT WILL COMPLY WITH ALL DISCOVERY OBLIGATIONS

5        The Government intends to continue full compliance with its discovery obligations under

6    Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. 3500), and Rule 16 of the Federal

7    Rules of Criminal Procedure.[2] To date, the Government has provided 86 pages of discovery as well

8    as DVD that includes the advisals of rights and post-arrest statements of Defendants.  The

9    Government anticipates that all discovery issues can be resolved amicably and informally, and has

10   addressed Defendant's specific requests below.

11       ### (1)  Defendant's Statements

12       The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to

13   provide to Defendant the substance of Defendant's oral statements and Defendant's written

14   statements.  The Government has produced all of the Defendant's statements that are known to the

15   undersigned Assistant U.S. Attorney at this date.  If the Government discovers additional oral or

16   written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such

17   statements will be provided to Defendant.

18       The Government has no objection to the preservation of the handwritten notes taken by any

19   of the agents and officers.  See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents

20   must preserve their original notes of interviews of an accused or prospective government witnesses).

21   However, the Government objects to providing Defendant with a copy of the rough notes at this

22   time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those

23   notes have been accurately reflected in a type-written report.  See United States v. Brown, 303 F.3d

24   582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A)

25   does not require disclosure of an agent's notes even where there are "minor discrepancies" between

26   the notes and a report).  The Government is not required to produce rough notes pursuant to the

27

28       [2]   Unless otherwise noted, all references to "Rules" refers to the Federal Rules of
         Criminal Procedure.

Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this case do not constitute "statements" in accordance with the Jencks Act.  See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms).  The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment.  Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient).  If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

### (2)    Arrest reports, notes, dispatch tapes

The Government has provided Defendant with all known reports related to Defendant's arrest in this case that are available at this time.  The Government will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16.  As previously noted, the Government has no objection to the preservation of the agents' handwritten notes, but objects to providing Defendant with a copy of the rough notes at this time because the notes are not subject to disclosure under Rule 16, the Jencks Act, or Brady.  The United States is presently unaware of any dispatch tapes in regard to this case in which defendants were arrested at the port of entry.

### (3)    Brady Material

The Government has and will continue to perform its duty under Brady to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment.  The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States.  See Giglio v. United States, 405 U.S. 150, 154 (1972); United States

1    v. Bagley, 473 U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not

2    requested by the defense.  Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10

3    (1976).  "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable

4    probability that, had the evidence been disclosed to the defense, the result of the proceeding would

5    have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).  The final

6    determination of materiality is based on the "suppressed evidence considered collectively, not item

7    by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

8         Brady does not, however, mandate that the Government open all of its files for discovery.

9    See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000)(per curiam).  Under Brady, the

10   Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence

11   (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the

12   defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995));

13   (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380,

14   389-90 (9th Cir. 1999), amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the

15   undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control

16   over.  (see United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001)).  Nor does Brady

17   require the Government "to create exculpatory evidence that does not exist," United States v.

18   Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply a

19   defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432,

20   438 (9th Cir. 1976).

21              **(4)    Sentencing Information**

22         The United States is not obligated under Brady v. Maryland, 373 U.S. 83 (1963), and its

23   progeny to furnish a defendant with information which he already knows.  United States v. Taylor,

24   802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady is a rule of disclosure, and therefore, there can be

25   no violation of Brady if the evidence is already known to the defendant.  In such case, the United

26   States has not suppressed the evidence and consequently has no Brady obligation.  See United States

27   v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

28

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is premature.

### (5)     Defendant's Prior Record

The United States has already provided Defendant with a copy of any criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

### (6)     Proposed 404(b) and 609 Evidence

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609(b), the United States will provide Defendant with notice of its proposed use of such evidence and information about such bad act at or before the time the United States' trial memorandum is filed. The United States reserves the right to introduce as prior act evidence any conviction, arrest or prior act that is disclosed to the defense in discovery.

### (7)     Evidence Seized

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

### (8)     Tangible Objects

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that are within its possession, custody, or control, and that are either material to the preparation of Defendant's defense, or are intended for use by the Government as evidence

during its case-in-chief at trial, or were obtained from or belong to Defendant.   The Government need not, however, produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### (9)    Evidence of Bias or Motive to Lie

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant.  The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

### (10)    Impeachment Evidence

The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie.

### (11)    Evidence of Criminal Investigation of Any Government Witness

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities.  "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the Government intends to call in its case-in-chief.  When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(12)  Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling.  The United States recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection or ability to communicate.  The Government objects to providing any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision.

**(13)  Witness Addresses**

The Government has already provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant.  A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial.  See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996).   Nevertheless, in its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required.  See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The Government objects to any request that the Government provide a list of every witness to the crimes charged who will not be called as a Government witness.  "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)."  United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)).  The Government is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendant.  Wood v. Bartholomew, 516 U.S. 1, 6-8

17                                              07CR2956-LAB

1   (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery

2   of admissible exculpatory evidence are not subject to disclosure under <u>Brady</u>).

3   **(14)   Name of Witnesses Favorable to Defendant**

4   As stated earlier, the Government will continue to comply with its obligations under <u>Brady</u>

5   and its progeny.  At the present time, the Government is not aware of any witnesses who have made

6   an arguably favorable statement concerning the defendant.

7   **(15)   Statements Relevant to the Defense**

8   The United States will comply with all of its discovery obligations.  However, "the

9   prosecution does not have a constitutional duty to disclose every bit of information that might affect

10   the jury's decision; it need only disclose information favorable to the defense that meets the

11   appropriate standard of materiality."  <u>Gardner</u>, 611 F.2d at 774-775 (citation omitted).

12   **(16)   Jencks Act Material**

13   The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on

14   direct examination, the Government must give the Defendant any "statement" (as defined by the

15   Jencks Act) in the Government's possession that was made by the witness relating to the subject

16   matter to which the witness testified. 18 U.S.C. §  3500(b).  A "statement" under the Jencks Act is

17   (1) a written statement made by the witness and signed or otherwise adopted or approved by him,

18   (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral

19   statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  If notes are

20   read back to a witness to see whether or not the government agent correctly understood what the

21   witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act.

22   <u>United States v. Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing <u>Goldberg v. United States</u>, 425

23   U.S. 94, 98 (1976)).  While the Government is only required to produce all Jencks Act material <u>after</u>

24   the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in

25   advance of trial to avoid any needless delays.

26

27

28

### (17)    Giglio Information

As stated previously, the United States will comply with its obligations pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

### (18)    Agreements Between the Government and Witnesses

There are presently no such agreements.

### (19)    Informants and Cooperating Witnesses

If the Government determines that there is a confidential informant who has information that is "relevant and <u>helpful</u> to the defense of an accused, or is <u>essential</u> to a fair determination of a cause," the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection.  <u>See</u> <u>Roviaro v. United States</u>, 353 U.S. 53, 60-61 (1957) (emphasis added); <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1505 (9th Cir. 1997) (same).

### (20)    Bias By Informants or Cooperating Witnesses

The Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie.

### (21)    Government Examination of Law Enforcement Personnel Files

The United States objects to this request.  Defendant has not shown how any personnel records of the arresting officers are relevant to this case.  Defense counsel has no constitutional right to conduct a search of agency files to argue relevance.  <u>See</u> <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 59-60 (1987) (citing <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and <u>Brady</u> did not create one")).  Thus, the United States will review these records for impeachment information and fully comply with its <u>Henthorn</u> obligations, but will not provide these records as Rule 16 discovery.

### (22)    Expert Summaries

The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705

of the Federal Rules of Evidence during its case-in-chief at trial.  This summary shall include the expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those opinions.

### (23)    Residual Request

The Government will comply with all of its discovery obligations, but objects to the broad and unspecified nature of Defendant's residual discovery request.

### D.     THE GOVERNMENT DOES NOT OPPOSE LEAVE TO FILE FURTHER MOTIONS SO LONG AS BASED ON NEW EVIDENCE

The Government does not object to the granting of leave to file further motions as long as the order applies equally to both parties and any additional defense motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion.

### III

### GOVERNMENT'S MOTION TO COMPEL RECIPROCAL DISCOVERY

### A.     All Evidence That Defendant Intends To Introduce In His Case-In-Chief

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1).  Pursuant to Rule 16(b)(1), requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which he intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness.  The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

1      **B.      Reciprocal Jencks – Statements By Defense Witnesses**

2          Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires

3      production of the prior statements of all witnesses, except a statement made by Defendant.  The time

4      frame established by Rule 26.2 requires the statements to be provided to the Government after the

5      witness has testified.  However, to expedite trial proceedings, the Government hereby requests that

6      Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date

7      before trial to be set by the Court.  Such an order should include any form in which these statements

8      are memorialized, including but not limited to, tape recordings, handwritten or typed notes and

9      reports.

10                                         **IV**

11                                    **CONCLUSION**

12          For the foregoing reasons, the United States requests the Court deny Defendant's motions

13      and grant the Government's motion for reciprocal discovery.

14          Dated: December 3, 2007

15                                              Respectfully submitted,

16                                              KAREN P. HEWITT
                                                United States Attorney
17
                                                *s/Lawrence A. Casper*
18
                                                LAWRENCE A. CASPER
19                                              Assistant U.S. Attorney

20

21

22

23

24

25

26

27

28

                                         21                          07CR2956-LAB

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR2956-LAB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| STEPHEN FRANCIS RHETT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Lawrence A. Casper, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of

UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO: (1) DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTION; (2) SUPPRESS DEFENDANT'S STATEMENTS; (3) COMPEL DISCOVERY AND PRESERVE EVIDENCE; AND (4) GRANT LEAVE TO FILE FURTHER MOTIONS AND UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Michelle Betancourt**
**Attorney for defendant, Stephen Francis Rhett**

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

**1.     None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 3, 2007.

*s/ Lawrence A. Casper*
LAWRENCE A. CASPER

07CR2956-LAB