**MICHELLE BETANCOURT**
California State Bar No. 215035
**CANDIS MITCHELL**
California State Bar No. 242797
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Tel: (619) 234-8467 / Fax: (619) 687-2666
candis_mitchell@fd.org

Attorneys for Mr. Rhett

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 07CR2956-LAB |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OF POINTS AND |
| v. ) | AUTHORITIES IN SUPPORT OF |
| ) | DEFENDANT'S MOTIONS *IN LIMINE* AND |
| **STEPHEN FRANCIS RHETT,** ) | OTHER TRIAL MOTIONS. |
| ) | |
| Defendant. ) | |
| ) | |

**I.**

**INTRODUCTION**

Mr. Stephen Francis Rhett is charged by indictment with violating 21 U.S.C. §§ 952 and 960, Importation of Marijuana, and 21 U.S.C. §841(a)(1), possession with intent to distribute, and 18 U.S.C. § 2, aiding and abetting. Relevant background facts for his pre-trial motions were set out in a prior pleading and are incorporated by reference herein.

**II.**

**THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM INTRODUCING EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(B) AND 609 BECAUSE THE GOVERNMENT HAS PROVIDED NO NOTICE DESPITE REPEATED DEFENSE REQUESTS**

Federal Rules of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed. R. Evid. 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d

1150, 1154 (9th Cir. 1999). Under Rule 609, evidence of prior convictions are usually admissible only under certain circumstances and in the discretion of the court as well.  Here, Mr. Rhett timely requested notice of proposed Rule 404(b) and Rule 609 evidence in his discovery requests to the government.  The government has given notice of the intent to introduce 404(b) or 609 evidence, by stating that it "reserves the right to offer any evidence, of any act, that was performed by the defendant, that is referenced in any of the discovery." [Gov. Resp. Mot. at pgs 15].  This blanket statement is insufficient notice.  Furthermore, any unnoticed evidence should be excluded from the trial based on a notice failure.  The noticed evidence described in the above quotation must also be excluded unless the government can meet the evidentiary strictures of Rule 404(b).

      The government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case; thus, "it must articulate precisely *the evidential hypothesis* by which a fact of consequence may be inferred from the other acts evidence." United States v, Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993).  It is not sufficient to state merely that the other act will be offered for one of the enumerated purposes.   Instead, the government must state precisely how the fact of consequence may be inferred from the other acts evidence.  Because the government has failed to articulate any  precise 404(b) evidence it intends to introduce, nor any evidentiary hypothesis by which a fact of consequence will be shown by this evidence, any and all other acts evidence must be excluded under Rules 401 and 404(b).

      Specifically, Mr. Rhett would contest the admission of evidence regarding the alleged marijuana found in a backpack when viewing evidence on November 29, 2007.  United States v. Beckman, 298 F.3d 788 (9th Cir. 2002), identified guiding factors for identifying whether bad act evidence is admissible under 404(b).  Those factors include that: (1) the other bad act must tend to prove material point in issue; (2) other bad act must not be too remote in time; (3) other bad act must be proven with evidence sufficient to show the act was committed: and (4) if admitted to prove intent, other bad act must be similar to the offense charged.  See Beckman, 298 F.3d at 794.  Here, the amount of material in the backpack was of such a small quantity, that it would not go to show that Mr. Rhett was involved in large scale importation of marijuana.  There is also no evidence of how long the substance had been the black blackpack, who put it there, or Mr. Rhett's

knowledge of its presence. Additionally, there lacks sufficient evidence to show that there was marijuana inside the bag as the trace amounts found were destroyed in the field test. As a result, Mr. Rhett was unable to perform his own tests on the substance found to determine that it was, in fact, marijuana. As a result, any mention of the alleged marijuana found in a black backpack should be excluded.

Mr. Rhett also seeks to preclude admission of any of his prior criminal history under rule 609 for similar reasons. He has not been convicted of an offense involving dishonesty or false statement. His remaining convictions have little similarity between the charged offense.

To the extent that this Court rules that Mr. Rhett's prior convictions are admissible under Federal Rule of Evidence 609, this Court should redact any documents referencing, and preclude the prosecutor from referring to, the offense and specific facts of any crime for which Mr. Rhett was convicted. Such information would be more prejudicial than probative of Mr. Rhett's guilt of the charged offense.

Finally, prior to any admission of 404(b) or 609 evidence, the court must consider whether the evidence would be more prejudicial than probative. In this case, any such evidence would be unduly prejudicial. Therefore, the Court must exclude any 404(b) or 609 evidence under Rule 403.

**III.**

**MR. RHETT'S COUNSEL SHOULD HAVE THE OPPORTUNITY TO VOIR DIRE THE JURY**

Pursuant to Fed. R. Crim. P. 24(a), to provide effective assistance of counsel and to exercise Mr. Rhett's right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

**IV.**

**INTRODUCTION OF PARTICULAR EVIDENCE IS HIGHLY PREJUDICIAL WITHOUT ADDING ANY PROBATIVE VALUE TO THIS TRIAL, THUS MERITING EXCLUSION UNDER FRE 403**

Federal Rule of Evidence 403 allows the Court to exclude relevant evidence if the "[p]robative value is substantially outweighed by danger of unfair prejudice."

**A.    Mug Shots**

There were "mug shot"-style pictures of Mr. Rhett taken while he was in custody. These pictures have no place at this trial. This is not an identity case: Mr. Rhett does not dispute that he is the individual arrested. Accordingly, these pictures have no probative value. In contrast, however, their appearance

1 automatically puts one in mind of a criminal, and is not unlike forcing a defendant to wear jail-issued clothing
2 while in trial. Under FRE 403, these pictures are highly prejudicial and devoid of probative value. They
3 should be excluded from trial as a result.

4 **B.    AKAs**

5     For similar reasons as mentioned previously, Mr. Rhett seeks to exclude all mention of any other
6 names that he might be known as. As he does not dispute he is the individual who is arrested and the mere
7 mention of AKAs is highly prejudicial as assumptive of a prior criminal history. They should be excluded
8 from the trial as a result.

9 **C.    Pre-Arrest Demeanor**

10     At trial, the government may seek to introduce evidence of Mr. Rhett's pre-arrest silence or demeanor.
11 Such testimony is improper. See United States v. Whitehead, 200 F.3d 634, 637-40 (9th Cir. 2000). Thus,
12 the government should be prohibited from eliciting such testimony regarding Mr. Rhett's pre-arrest
13 demeanor. To the extent the government would seek to introduce evidence of Mr. Rhett's pre-arrest
14 demeanor as substantive evidence of guilt or in impeachment, he files this anticipatory motion. The
15 government should be prohibited from introducing such evidence. The exclusion of Mr. Rhett's pre-arrest
16 demeanor is especially compelling in this case as his pre-arrest actions were of a highly personal and
17 prejudicial nature.

18     **1.    "Nervousness" Testimony is Largely Irrelevant and Overly Prejudicial**

19     First, reactions to this type of situation will vary widely based on various factors, including one's life
20 experiences, educational level, age, gender, health, medical conditions, diet, and the circumstances
21 surrounding the arrest. Thus Mr. Rhett's reaction, if any, is not probative of anything. See FED. R. EVID. 401,
22 402. Laywitness testimony regarding nervousness, absent some prior knowledge of the defendant, has
23 minimal, if any, relevance. See United States v. Pineda-Torres, 287 F.3d 860, 866 (9th Cir. 2002) (describing
24 an immigration officer's testimony about the defendant's "apparent nervousness" only "marginally probative"
25 on the issue of knowledge) United States v. Wald, 216 F.3d 1222, 1227 (10th Cir.2000) (*en banc*) (evidence
26 of nervousness "is of limited significance"[,] particularly when [the agent] had no prior acquaintance with
27 the [defendant].")

28

1    Second, such evidence is potentially highly prejudicial, and it should not be allowed on that basis as
2 well.  See FED. R. EVID. 403; Jenkins v. Anderson, 447 U.S. 231, 239 (1980); United States v. Hale, 422 U.S.
3 171, 180-81 (1975); Stewart v. United States, 366 U.S. 1, 5 (1961); Grunewald v United States, 353 U.S. 391,
4 424 n.5 (1957).

5    **2.    "Nervousness" Testimony Violates Rules 701 & 704(b)**

6    Such evidence should be excluded if it is couched in terms of a law enforcement witness' personal
7 opinion about Mr. Rhett's behavior, *i.e.,* "he was nervous."  An inspector or agent's personal opinion is
8 irrelevant and such opinion testimony based on no prior knowledge of the defendant, and upon a very limited
9 observation opportunity, violates Fed. R. Evid. 701.  Rule 701 provides that a lay witness can only testify to
10 opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear
11 understanding of the witness' testimony or to the determination of a fact in issue and (c) not based on
12 scientific, technical, or other specialized knowledge within the scope of Rule 702.  In Gonzalez-Rivera v.
13 INS, 22 F.3d 1441 (9th Cir. 1994), this Circuit held that an INS agent's testimony at a suppression hearing
14 that an individual was nervous must be disregarded because it was not based upon "reliable, objective
15 evidence." Id. at 1447.  There, when explored, the basis for the agent's testimony was that the individual
16 appeared to have a "dry mouth."  The court stated that absent reliable, objective testimony that people who
17 are nervous have a dry mouth, as opposed to just being thirsty, this inference was nothing more than
18 "subjective feelings [which] do[] not provide any rational basis for separating out the illegal aliens from the
19 American citizens and legal aliens." Id.  Likewise, testimony by the primary agent that Mr. Rhett was
20 "nervous" is nothing more than a subjective judgment based upon no prior knowledge of him and should not
21 be considered by the jury.

22 **D.    Marijuana Found in Black Backpack on November 29, 2007**

23    Submission of trace amounts of a substance alleged to be marijuana found in a backpack would likely
24 confuse the jury and could cause them to attach undue weight to the evidence.  As a result, it should be
25 excluded it is irrelevant as to whether Mr. Rhettt knowingly and intentionally attempted to import 508.10 kg
26 of marijuana in a trailer.

27 / / /

28 / / /

**E.   Letter to Fines, Penalties, and Forfeitures Regarding Return of Property**

Mr. Rhett's undated letter to the Fines, Penalties, and Forfeitures Office regarding the seized vehicle in this case should be excluded. See Exhibit A. The letter serves no probative value as Mr. Rhett does not claim that he is the owner of the vehicle or trailer seized in this case. Additionally, he only qualifies his personal property with the possessive pronoun, referring to the truck as "the" and his property as "my", and even then he does not take the time to inventory what his personal property consists of. See Exhibit A. As a result, the letter would serve no probative value and its admission would only seek to confuse the jury as to a non-essential issue in the case.

**F.   Visuals of any Recordings Made of Mr. Rhett's Post-Arrest Statements**

Mr. Rhett's videotaped confession should be excluded from being shown to the jury. Rather, if the government wishes to include portions of his statements from the interrogation, they should rely solely on transcribed audio track. The videotaped interrogation will not be on an "equal footing" with one depicting the co-defendant, Ms. Janet Bernice Forbes. Due to Mr. Rhett's lack of control of his bodily functions at his arrest, his interview was conducted while he was wearing what could best be described as a paper thin hospital gown. This outfit takes away from the credibility of his testimony and is highly prejudicial to Mr. Rhett. See Estelle v. Williams, 425 U.S. 504-505, 96 S. Ct. 1691, 1693 (1976) (the Court reasoned that where a defendant is forced to wear non-standard clothing when appearing before the jury, "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment."). There is no compelling reason why Mr. Rhett's interrogation need be displayed to the jury in a manner that would only serve to highlight the differences in appearances between himself and his co-defendant and subsequently prejudice him.

**V.**

**ALL EXPERT WITNESSES OFFERED WITHOUT APPROPRIATE NOTICE TO MR. RHETT VIOLATE FEDERAL RULES OF CRIMINAL PROCEDURE 16(A)(1)(E) AND MUST BE EXCLUDED.**

Federal Rule of Criminal Procedure 16(a)(1)(E) mandates that "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial . . . . The summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons

for those opinions, and the witnesses' qualifications." The obligation to provide this material is ongoing, continuing prior to and during trial. Fed. R. Crim. P. 16(c). When a party fails to comply with the discovery rules set forth in Rule 16, exclusion is a proper remedy. Fed. R. Crim. P. 16(d)(2). See also Advisory Committee Notes to 1997 Amendment (asserting that "[u]nder rule 16(a)(1)(E), as amended in 1993, the defense is entitled to disclosure of certain information about expert witnesses which the government intends to call during the trial" (emphasis provided.).

Early in this case Mr. Rhett filed pretrial motions requesting notice of any expert witnesses that the government intends to call at trial, including rebuttal. Thus far, the government has given no notice of any expert witness testimony. If the government seeks to offer any expert testimony without 1) timely notifying Mr. Rhett of the expert and his or her qualifications; 2) providing a summary of the expected testimony; and 3) providing a summary of the bases of the expert's opinion, this Court should exclude such witnesses from testifying at trial. Mr. Rhett respectfully requests that this Court grant a motion *in limine* accordingly, to give effect to the discovery requirements of Rule 16, and to afford the accused the opportunity to prepare his defense in this case.

**VI.**

**THE COURT SHOULD EXCLUDE TESTIMONY REGARDING THE VALUE OF THE NARCOTICS**

Mr. Rhett objects to any expert testimony about the value of the narcotics seized in this case. This testimony is irrelevant and therefore inadmissible under Rule 402. Even if minimally probative, this evidence should be excluded under Rule 403 because it is unduly prejudicial. If the government does not introduce value testimony, Mr. Rhett offers to stipulate that the quantity of narcotics in this case is a distributable, not personal use, quantity. This obviates the need for value testimony, and also counsels for prohibiting the government from bringing the narcotics into the courtroom in an attempt to prejudice the jury. See Fed. R. Evid. 403; United States v. Merino-Balderrama, 146 F.3d 758, 762 (9th Cir. 1998) (In "Old Chief [the Supreme Court] held that a defendant's offer to stipulate to an element of a crime is relevant evidence that must be factored into a district court's analysis under [Federal Rule of Evidence] 403.").

One of the major reasons that the government often seeks to introduce value testimony is to demonstrate that the defendant must have known of the presence of drugs in the car. Because the drugs are

valuable, the argument runs, drug smugglers would not entrust them to unknowing couriers. The Federal Rules of Evidence and controlling case law, however, specifically forbid this chain of inference in the form of expert testimony.

Rule 704 provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed. R. Evid. 704.

Ninth Circuit case law holds that this rule applies any time an expert seeks to opine on a defendant's knowledge, willfulness, or other mental state. See United States v. Morales, 108 F.3d 1031, 1036 (9th Cir. 1997) ("[t]he language of Rule 704(b) is perfectly plain. It does not limit its reach to psychiatrists and other mental health experts. Its reach extends to all expert witnesses"); United States v. Webb, 115 F.3d 711 (9th Cir. 1997) (holding it impermissible under Rule 704(b) for expert to testify, even in hypothetical form, whether defendant knew of weapons concealed in car.). Indeed, knowledge—the primary contested issue in this trial—is a mental state. Any proposed expert who would opine (directly or indirectly) that Mr. Rhett must have known that the trailer behind the vehicle he was driving contained marijuana testifies to his mental processes or condition. Whatever the form, the government may not use the trappings of "expertise" to bolster speculation regarding Mr. Rhett's alleged knowledge. This testimony is expressly forbidden by Rule 704 and by Ninth Circuit law. Drug value testimony must not be used to circumvent these established evidentiary rules.

**A.    The Government Should Be Precluded from Eliciting "Structure Testimony" From the Value Expert.**

Typically the government's proffers that its value expert will explain that drivers have the critical responsibility of passing by law enforcement officials who are trained to detect persons transporting loads of narcotics. This specific testimony must be excluded. This proposed opinion is nothing more than "structure testimony" offered through a value expert. As a result, it invites reversible error.

In United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), amended, 246 F.3d 1150 (9th Cir. 2001), the Ninth Circuit held that structure testimony is inadmissible in a non-complex, non-conspiracy drug

smuggling case. As the court wrote, "[t]o admit this testimony on the issue of knowledge, the only issue in the case, was unfairly prejudicial, and an abuse of discretion under Rule 403." Id. at 1017. Testimony as to the "critical responsibility" of drivers presupposes a compartmentalized, organized drug smuggling network. It assumes that the drivers know that drugs exist in the vehicles, or trailers they are towing, and couches the endeavor in terms of a "job" willingly taken on by the driver of the car. This testimony essentially seeks to assume out of existence the key issue in this trial: whether Mr. Rhett knew that drugs were in the trailer he was towing. Such testimony is improper and must be excluded.

**B.    The Court Should Exclude any Expert Testimony on "Retail Value" Because it is It Irrelevant and Highly Prejudicial.**

Even assuming that this testimony were otherwise admissible, Rule 403 prohibits expert testimony on the street value of marijuana at trial. According to the government's argument, this testimony is relevant because drug trafficking organizations would not entrust this "valuable commodity" to an unknowing person. Several problems exist with this argument. First, there is absolutely no evidence that any vast drug trafficking organization exists in this case: the government's argument rests on facts that are not, and will not, be in evidence. Second, this reasoning rests on rank speculation as to the mental processes of unknown persons. The government cannot simply proffer evidence on what these vague and unknown "drug traffickers" would or would not do in a given situation. There is virtually no probative value in this proposed testimony.

In contrast, this testimony will result in substantial prejudice to Mr. Rhett. The sheer monetary value of this marijuana could inflame the passions of the jury, and distract them from Mr. Rhett's lack of knowledge -- the true issue in this case. The amount of money at stake could well suggest that a vast drug empire is implicated here; indeed, this inference is a key premise in the government's relevance argument. This insinuation, however, has absolutely no evidentiary support. Beyond the government's attenuated and factually unsupported argument that the value of these drugs demonstrates the defendant's knowledge, absolutely no probative value exists in this testimony. The prejudice, in contrast, is extreme. This testimony should therefore be independently excluded under FRE 403.

///

///

**C.    The Court Should Preclude the Value Expert From Testifying to Irrelevant Experience Seizing Large Quantities of Narcotics**

The government's value expert lists on his qualification summary experience dealing with large-scale narcotics seizures. Were this Court to allow the value expert to testify to these experiences, the jury might get the wrong impression that this case, too, is linked to larger, more serious seizures. Given that the value expert readily can demonstrate his qualifications without resorting to tales of dramatic drug seizures, Mr. Rhett requests that this testimony be precluded. See Fed. R. Evid. 401, 402 and 403.

## VII.

**THIS COURT SHOULD EXCLUDE ANY EXPERT TESTIMONY DESCRIBING THE STRUCTURE OF SUPPOSED DRUG SMUGGLING ORGANIZATIONS, AS IT IS IRRELEVANT, IMPROPER UNDER FRE 702 AND 703, AND UNDULY PREJUDICIAL UNDER FRE 403.**

Under this Circuit's precedent United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), and United States v. McGowan, 274 F.3d 1251 (9th Cir. 2001), structure testimony may not be permitted in this trial. This sort of "expert" testimony not only fails the balancing test set forth by FRE 403, but also is literally irrelevant and an abuse of discretion under FRE 401. Vallejo 237 F.3d at 1017. The same problem exists with any organizational structure evidence in this case. The government has not charged Mr. Rhett with conspiracy. No evidence whatsoever suggests that a vast drug trafficking network played any role in the instant offense. Any attempt to connect Mr. Rhett to a vast drug empire that has not been alleged and has not been proven violates FRE 401, 403, and Ninth Circuit case law. A motion *in limine* excluding such evidence should be granted accordingly.

## VIII.

**THE PRESENCE OF MARIJUANA IN THE COURTROOM IS HIGHLY PREJUDICIAL, MINIMALLY PROBATIVE AT BEST, AND THUS PROPERLY EXCLUDED UNDER FRE 403.**

At trial, the government may insist on presenting the actual bags of marijuana seized to the jury. In this particular case, in which Mr. Rhett's knowledge of the drugs is the only contested issue, this evidence is highly inflammatory yet has virtually no probative value as to any fact in dispute. It must be excluded under FRE 403.

FRE 403 asserts that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Presentation of the marijuana seized in this case to the jury runs afoul of this evidentiary rule.

It is feared that the government may attempt to inflame the passions of the jury through gratuitous display of the marijuana seized in this case. In the past, some Assistant United States' Attorneys have taken every opportunity to handle bags of marijuana, passing them before the jury, and moving them about the courtroom. A few have gone so far as to wear blue chemical resistant gloves when handling narcotic substances, further attempting to poison the jury through dramatics. This physical evidence has no place at this trial. Because the presence of marijuana seized is undisputed in this case, there is simply no reason to bring this physical evidence into the courtroom. This lack of probative value, however, stands in contrast to the highly prejudicial nature of this contraband. Many jurors will no doubt be scandalized by the nature of the drugs involved in this case. In sum, this evidence proves no issue that is in dispute, yet threatens to badly prejudice Mr. Rhett. For these reasons, Mr. Rhett respectfully requests that this evidence be excluded from trial.

## IX.

### THIS COURT SHOULD ORDER PRODUCTION OF "SUPPLEMENTAL REPORTS" AND TECS

Pursuant to Rule 16 of the Federal Rules of Criminal Procedure and upon request of the defense, the government has a duty to turn over any reports in its possession that are material to the preparation of the defendant's defense. The defense has requested such reports in its motion for discovery.

**A.     Production of Supplemental Reports**

Mr. Rhett requests disclosure of any "supplemental reports" generated in this case. It has come to Mr. Rhett's attention that the government's recent practice is to not disclose these "supplemental reports." These reports generally memorialize later investigation of the case and can include information that confirms a defendant's statements made at the border. Particularly, Mr. Rhett seeks any test results received as a result of the inspection of the Ford F-250 and trailer performed by Agent Daniel Duff and AUSA Lawrence Casper without the presence of defense counsel on November 29, 2007. Mr. Rhett believes that such a report is

1  discoverable under Brady and Rule 16.  Additionally, pre-trial disclosure will avoid unnecessary delay at trial
2  should the reports become producible under Jencks.  See, e.g, Fed. R. Crim. P. 26.2(d).  If the government
3  contends that any "supplemental report" generated in this case is not discoverable, Mr. Rhett requests that
4  the Court view this report *in camera.*

**B**.     **Production of Any TECS or Other Computer-Generated Hits Related to Mr. Rhett, the Truck, or the Trailer That Contained the Narcotics**

Mr. Rhett requests the Court to order the government to produce any "TECS" or other computer-generated hits related to him, the 1999 Ford F-250 pickup truck (California license plate "3QOS602") that he was driving when he was arrested, or the trailer (California license plate "4J1558") being towed behind the pickup truck.  It may be part of Mr. Rhett's defense that the truck or trailer he was driving on the day he was arrested had been out of his control for sometime.  Mr. Rhett is willing to give the court an *ex parte* proffer to the court in order for the court to better understand the relevance. Information that other persons had driven the truck or trailer across the border or that the truck or trailer was under investigation could tend to exculpate Mr. Rhett by strengthening a theory that another person with access to either was responsible for hiding drugs there.

**X.**

**THE COURT SHOULD REQUIRE THE GOVERNMENT TO ESTABLISH CHAIN OF CUSTODY**

Mr. Rhett fully expects the government to adhere to the evidentiary requirements established by Fed. R. Evid. 901 concerning the authentication of physical evidence. Should the government seek to admit the alleged marijuana seized in this case, establishment of a "chain of custody" is required to establish that the drug evidence presented at trial is indeed the same drug evidence that had a role in the events in issue.

As the alleged marijuana seized in this case is "an object connected with the commission of a crime, the proponent must also establish the chain of custody." Gallego v. United States, 276 F.2d 914, 917 (9th Cir.1960).  Additionally, the government "must introduce sufficient proof so that a reasonable juror could find that the items in the bag are in 'substantially the same condition' as when they were seized." Id.

/ / /

1 / / /

2 / / /

3

## XI.

## THIS COURT SHOULD EXCLUDE POVERTY EVIDENCE

It is impermissible for the prosecution to elicit testimony or to comment in any fashion upon the difficult financial circumstances of the defendant. Such comments regarding poverty are forbidden. United States v. Romero-Avila, 210 F.3d 1017, 1022 n.2 (9th Cir. 2000). Specifically, Mr. Rhett seeks to exclude copies of his bank statements and references to the amount of money found on his person at the time of his arrest.

Even before the Romero-Avila case, this Circuit had concluded as much. In United States v. Mitchell, 172 F.3d 1104 (9th Cir.1999), the defendant was convicted of bank robbery and, at trial, the prosecution offered evidence that the defendant was poor to prove the defendant's motive to commit the bank robbery. In reversing the conviction, the court stated that:

> Poverty as proof of motive has in many cases little tendency to make theft more probable. Lack of money gives a person an interest in having more. But so does desire for money, without poverty. A rich man's greed is as much a motive to steal as a poor man's poverty. Proof of either, without more, is likely to amount to a great deal of unfair prejudice with little probative value.

Id. at 1108-09. To be admissible, the court stated that the poverty evidence must be accompanied by something more, such as an "unexplained, abrupt change in circumstances." Id. at 1108-09. Ninth Circuit precedent suggests that poverty evidence is only admissible if accompanied by evidence of a specific and immediate financial need. See United States v. Jackson, 882 F.2d 1444, 1453 (9th Cir.1989) (Reinhardt, J., dissenting); see also id. at 1450 (majority opinion) (noting that "poverty alone does not indicate a motive to commit, or the commission of, a crime"); see also United States v. Bensimon, 172 F.3d 1121, 1129 (9th Cir. 1999) (fact that defendant in bankruptcy at time crime committed does not demonstrate particular need for money); Mitchell, 172 F.3d 1104, 1108-09 (9th Cir.1999) (evidence of poverty, absent "an unexplained abrupt change of circumstances," is inadmissible to prove motive); United States v. Grissom, 645 F.2d 461,

469 n.11 (5th Cir. 1981) ("[I]t is almost always grossly improper for any lawyer representing the United States government to comment on the **indigency** of a defendant.").

"Poverty comments" may not be made even when the evidence commented upon is admitted by the defense. Romero-Avila, 210 F.3d 1017, 1022 and n.2 (9th Cir. 2000). Romero-Avila specifically rejected the very argument that the defendant is barred from challenging comments upon improper poverty testimony because he elicited it during cross-examination, and held that the government's comments were plain error. As such, regardless of any evidence proffered by the defendant as to his financial circumstances, any reference to the defendant's financial situation must be excluded.

## XII.
## CONCLUSION

For the foregoing reasons, Mr. Rhett respectfully requests that this Court grant these motions *in limine*, as well as these other motions for trial.

Respectfully submitted,

DATED: December 19, 2007

s/ *Candis Mitchell*
**CANDIS MITCHELL**
**MICHELLE BETANCOURT**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Rhett
candis_mitchell@fd.org