KAREN P. HEWITT
United States Attorney
LAWRENCE A. CASPER
Assistant U.S. Attorney
California State Bar No. 235110
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone No.: (619) 557-7455
Facsimile No.: (619) 235-2757
Lawrence.Casper@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN FRANCIS RHETT (1),<br>JANET BERNICE FORBES (2),<br><br>Defendants. | Criminal Case No. 07CR2956-LAB<br><br>District Judge:   Hon. Larry A. Burns<br>Courtroom:         9 (Second Floor)<br>Date:                    January 2, 2008<br>Time:                   12:00 p.m.<br><br>UNITED STATES' MOTIONS IN LIMINE TO:<br><br>(1) ADMIT GOVERNMENT EXPERT TESTIMONY;<br>(2) ADMIT TESTIMONY REGARDING DEMEANOR AND APPEARANCE;<br>(3) ADMIT 609 EVIDENCE<br>(4) PRECLUDE REFERENCE TO HEALTH, AGE, EDUCATION & PUNISHMENT;<br>(5) PRECLUDE SELF-SERVING HEARSAY;<br>(6) PRECLUDE DEFENSE EXPERTS;<br>(7) EXCLUDE WITNESSES (EXCEPT FOR THE CASE AGENT);<br>(8) PRECLUDE EVIDENCE OF PRIOR GOOD ACTS;<br>(9) PRECLUDE EVIDENCE OF DURESS OR NECESSITY; and<br>(10) RENEW ITS MOTION FOR RECIPROCAL DISCOVERY. |

Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and LAWRENCE A. CASPER, Assistant U.S. Attorney, hereby files its Motions in Limine. These motions are based upon the files and records of this case.

**I**

**STATEMENT OF FACTS**

**A.   Statement of the Case**

A federal grand jury on October 30, 2007 returned a two-count Indictment charging Defendants Stephen Francis Rhett and Janet Bernice Forbes with: (1) importing approximately 508.10 kilograms (1117.82 pounds) of marijuana, in violation of 21 U.S.C. §§ 952 and 960, and (2) possessing with intent to distribute that same amount of marijuana, in violation of 21 U.S.C. § 841(a)(1). Defendant entered a not guilty plea before the Magistrate Judge on that same day.

**B.   Statement of Facts**

**1.   Primary Inspection: Defendant Rhett's Nervousness**

On September 23, 2007, at approximately 10:20 p.m., Defendants Stephen Francis Rhett (Rhett) and Janet Bernice Forbes (Forbes) entered the United States from Mexico through the San Ysidro Port of Entry in a white 1999 Ford F-250 with California license plate (3QOS602) towing a trailer also bearing California license plates (4JL1558). Defendant Rhett was the driver and Defendant Forbes was the front seat passenger.

At primary inspection, Defendant Rhett told Customs and Border Protection Officer (CBPO) Fontanilla that they were not bringing anything from Mexico and that, instead, they went to Mexico to deliver building materials as donations to Mexico and that the "trailer is empty now." At CBPO Fontanilla's request, Rhett opened the trailer. Upon entering the trailer, CBPO Fontanilla noticed a new plywood floor in the trailer. CBPO Fontanilla tapped the floor with his flashlight and it sounded soft but solid. He also noticed that the underside of the floor appeared to have a space discrepancy. CBPO Aguilar followed CBPO Fontanilla to back him up at the rear of the trailer. CBPO again asked Defendant Rhett what he was bringing back from Mexico. Rhett responded, "Nothing, sir, is there any problem?" CBPO Aguilar began to unscrew one screw on the floor, pried the corner of the floor and noticed a space discrepancy and discovered blue packages. While CBPO Aguilar was removing one of the wooden floor panels, he noticed Defendant Rhett become so nervous that he proceeded to defecate on himself. Defendants Rhett and Forbes were escorted to the security office and the vehicle and trailer were driven to secondary for further inspection.

**2.     Secondary Inspection: Discovery of 508.10 Kilograms of Marijuana**

Upon further examination by CBPO Everett and her narcotics detector dog, the dog alerted to the presence of a narcotics odor coming from the rear bumper area of the trailer. Upon secondary inspection by CBPO John Tobin, he observed that there were three saw horses, clothes and a case of water in the trailer. He also observed that the flooring was clean. CBPO Tobin unscrewed the flooring, lifted it to reveal the compartment and observed packages. CBPO Tobin probed one package, which field tested positive for marijuana. Defendants were then placed under arrest. A total of 108 packages were then removed from the vehicle and 508.10 kilograms of marijuana (approximately 1117.82 pounds) were seized.

**3.     Defendant Stephen Rhett's Post-Miranda Statement**

At approximately 1:00 a.m. on September 24, 2007, Defendant Rhett was read his Miranda warnings, acknowledged his understanding and waived them orally and in writing and then provided a videotaped statement to ICE Special Agent Daniel Duff; the statement was witnessed by ICE Special Agent Christian Alva. Defendant Rhett, who, as discussed above, defecated on himself, informed agents that he had certain medical conditions; accordingly, before the interview the agents took appropriate precautions and provided Defendant Rhett with a paper shirt and mask. Defendant Rhett, who had $16 in his possession, stated he was unemployed and homeless; he did not have a driver's license in his possession. Defendant claimed that he was approached on the streets by "Jen," a white female and an unidentified male, "Robert", who claimed to be from First Presbyterian Church in San Diego. Rhett claimed that they offered him $100 each way to transport building materials to Tijuana, Mexico. Rhett stated that he agreed to transport the materials for payment.

Defendant Rhett claimed he received the F-250 and trailer at the First Presbyterian somewhere in downtown San Diego but claimed he could not recall the address or location. Upon receiving the truck, Rhett claims he drove directly into Mexico where he met with an unknown man, whom he followed to the "Flamingo Hotel" in Tijuana. Rhett claimed he stayed the night in the hotel and met with "Jen" and a Hispanic female, whom he identified as "Silvia", the following morning at approximately 6:00 a.m. On the morning of his arrest, Defendant Rhett met with

1  "Felipe" who is the father of "Jen."  Rhett claimed "Felipe" offered him $2,000 to smuggle four
2  undocumented aliens into the United States.

3  Rhett stated that, after crossing the border, he was to drive the vehicle and trailer to
4  Temecula and park them at a gas station parking lot off of the I-15 and California Oaks.  Rhett
5  claimed he did not know his passenger.  He claimed to have observed the trailer get loaded and
6  unloaded with building materials.  Rhett admitted he was suspicious but denied having knowledge
7  of the marijuana in the trailer.  "Jen's" direct connect telephone number was obtained from
8  Defendant Rhett's cellular telephone.  The interview concluded at approximately 1:54 a.m., after
9  Rhett requested to consult with an attorney.

### 4.  Defendant Janet Bernice Forbes' Post-Miranda Statement

At approximately 3:00 a.m. on September 24, 2007 Defendant Janet Bernice Forbes was interviewed in English by ICE Special Agent Duff and witnessed by Special Agent Alva. Defendant Forbes stated that she had been unemployed for four years and that she is transient but has a San Diego mailing address, which she provided.  Forbes had $6.00 in her possession.  Defendant was read her Miranda rights in English, acknowledged she understood her rights and waived them orally and in writing before providing a videotaped statement.

Forbes stated that she was on methadone for heroin addiction and that she frequents Tijuana often to receive her methadone treatments.  She claimed that, on the morning of her arrest, she went to Tijuana, Mexico to receive one of her treatments.  She stated that, after receiving her treatment, she was approached by "Felipe," who offered to pay her $500 to be a passenger in a vehicle that was to cross illegal aliens into the United States.  She stated that she was picked up by a taxi and driven to a house in Colonia Libertad, Tijuana, Mexico.  Upon her arrival, she observed approximately six to eight people and met Defendant Rhett there.  She stated that she spent approximately twenty minutes at the house and then left with Rhett and an unknown Hispanic male named "Jimmy."  She stated that they traveled approximately 10-15 minutes to a gas station possibly in Rosarito, Mexico, where the white F-250 and trailer were located.  Forbes stated that Defendant Rhett told her he had made seven previous trips across the border but that this was his first time working for this family.

Upon receiving the F-250 and trailer, Rhett got into the vehicle with her and Jimmy; Jimmy rode with them for a little while until Jimmy told Rhett that it was time for Jimmy to get out. Forbes stated that Defendant Rhett was receiving numerous Nextel calls from a woman identified as "Jen." Forbes said "Jen" was requesting that Rhett call her back after they crossed the border. While they were in line to enter the United States at the port of entry, Jen was calling Rhett every two minutes. She also claimed to have heard Jen tell Rhett that he needed to move over a few lanes to cross or they would be sent to secondary; they were, however, unable to change lanes because of the trailer. Forbes said that Rhett told her that the previous time he crossed he needed help from the previous female passenger to lower the trailer gate.

Defendant Forbes claimed she thought she was transporting undocumented aliens and believed she would receive her $500 payment in Mexico. She denied knowledge of the marijuana and the interview concluded at approximately 4:00 a.m.

**5.     Defendants' Criminal Histories**

Both Defendants have lengthy criminal histories, including multiple prior arrests and/or convictions for narcotics related offenses.

(a)     Stephen Rhett

On October 19, 2000 Defendant Rhett was convicted in the 299th District Court in Austin, Texas of a felony intoxicated assault with a vehicle/serious bodily injury in violation of Texas Penal Code Section 49.07 and was sentenced to 10 years in jail; his probation was subsequently revoked in January 2003 when he was sentenced to 4 years in jail. Defendant Rhett also has a May 2001 misdemeanor conviction for possession of a controlled substance in Travis County, Texas in violation of Texas Health & Safety Code Section 481.119(b). In addition, on January 28, 2003, Defendant Rhett was convicted of violating Texas Penal Code Section 22.01(A)(1), a Class A misdemeanor assault causing bodily injury. On September 24, 1999, Defendant Rhett was convicted of a misdemeanor assault/family violence and sentenced to 45 days in jail.

(b)     Janet Forbes

On January 23, 1992 Defendant was convicted of violating California Penal Code Section 01:647(A) for Disorderly Conduct: Solicit Lewd Act and 01:647(B) for prostitution. On January

3, 1992, this Defendant was convicted of aiding and abetting an illegal entry for which she was sentenced to 60 days jail. On March 3, 1985, this Defendant was convicted of possession of a controlled substance in violation of California HS 11377 and was sentenced to 21 days jail and 12 months probation. Defendant Forbes also has numerous theft and other convictions dating back to the mid-1980's.

## II

## ARGUMENT

Rule 12(b) of the Federal Rules of Criminal Procedure permits a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b). Mixed questions of law and fact remain the proper domain of the district court, including preliminary questions regarding the admissibility of evidence, the competency of witnesses, the voluntariness of confessions, and the preclusion of improper defenses. See United States v. Gaudin, 515 U.S. 506, 525-26 (1995); United States v. Haynes, 143 F.3d 1089, 1090 (7th Cir. 1998) (motion in limine may be used to prevent introduction of evidence supporting a defense whose elements cannot be established).

### 1.     The Government's Expert Testimony Should Be Admitted

The Government will present testimony from two expert witnesses: (1) Gary Goldberg, a Senior Forensic Chemist for the Drug Enforcement Agency who will testify regarding the identification of the drug seized based upon chemical analysis, and (2) Special Agent Joseph DiMeglio of Immigration and Customs Enforcement (ICE) who will testify regarding the value of the drugs, that the amount seized was a distributable quantity, and that marijuana traffickers do not use unknowing couriers or blind mules. The Government does not intend to present testimony regarding the general structure of drug trafficking organizations, unless Defendant opens the door to such testimony. The Government has complied with its discovery obligations and provided Defendant with written notice of the proposed expert witnesses and a copy of the chemist's vitae. The drug valuation reports prepared by Special Agent DiMeglio will also be disclosed upon receipt.

      **(a)**     **Standards for Admissibility**

The trial judge is the gatekeeper regarding the type and scope of expert testimony that should be admitted in any particular trial, and has "broad latitude" in determining the relevance and reliability of such testimony. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142 (1999); United States v. Murillo, 255 F.3d 1169, 1178 (9th Cir. 2000) (district court properly admitted expert testimony of DEA agent). Determining whether expert testimony would assist the trier-of-fact in understanding the facts in issue is within the sound discretion of the trial judge. See United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). The district court may consider the Daubert test or any other factors in addressing relevant reliability concerns regarding expert testimony. Kumho, 526 U.S. at 149-50 (noting that "there are many different kinds of experts, and many different kinds of expertise," including, "experts in drug terms, handwriting analysis, criminal modus operandi, . . . ."); United States v. Brown, 415 F.3d 1257, 1266 (11th Cir. 2005) (Kumho means that "expert testimony that does not meet all or most of the Daubert factors may sometimes be admissible.").

The expert's opinion may be based on hearsay or facts not in evidence when the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703; see, e.g., United States v. Gil, 58 F.3d 1414, 1422 (9th Cir. 1995) (stating "[w]e have consistently held that government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi."); see also United States v. Hankey, 203 F.3d 1160, 1168-70 (9th Cir. 2000) (affirming district court's admission of gang expert testimony that gang members would be subject to violent retribution if they testified against another gang member). The facts or data underlying the expert's opinion need not be admissible in evidence in order for the opinion or inference to be admitted. Fed. R. Evid. 703.

      **(b)**     **Identity of the Marijuana**

Courts have admitted expert testimony by forensic chemists concerning the identification of controlled substances. See United States v. Robinson, 59 F.3d 1318, 1322-23 (D.C. Cir. 1995). The Government will seek to have DEA Senior Forensic Chemist Gary Goldberg qualified as an expert witness to testify that, based on the chemical analysis, the substance seized in this case was

marijuana. The forensic chemist will testify regarding his background and qualifications, and the methodologies used to identify that the substance inside the packages was marijuana.

### (c) Wholesale and Retail Value

The Government will seek to have Agent DiMeglio qualified as an expert witness in the area of drug valuation and distributable quantity determination. Agent DiMeglio will testify regarding his background and qualifications, the methodology used to determine the wholesale and retail values of the marijuana seized in this case, and his opinion that the marijuana seized was intended for distribution rather than for personal use. Agent DiMeglio will base his opinions on his background, training, and experience investigating drug trafficking cases, his consultation of numerous public and confidential sources of information, his hands-on experience interrogating drug traffickers, debriefing confidential informants and cooperating defendants, and discussing intelligence information with other federal, state, and local agents and law enforcement officers.

The testimony will focus on the wholesale and retail values of the marijuana seized in this case, figures which have relevance to Defendant's knowledge and intent to distribute. See United States v. Mendoza-Paz, 286 F.3d 1104, 1111-12 (9th Cir. 2002) (narcotics valuation expert properly admitted at trial); United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (finding that price and quantity of narcotics is relevant to defendant's intent to distribute). The Ninth Circuit has upheld the admissibility of expert testimony as to the retail value of drugs. See United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994).

### (d) Distributable Quantity

Agent DiMeglio will state his opinion that the amount of marijuana seized was for distribution rather than a personal use amount. This opinion will be based on the value and amount of marijuana seized, and the manner in which the marijuana was packaged and concealed in the vehicle. See Glenn, 667 F.2d at 1292; Sanchez-Lopez, 879 F.2d at 555; Savinovich, 845 F.2d at 838.

### (e) Unknowing Courier

Agent DiMeglio may present expert testimony that drug traffickers generally do not entrust large quantities of drugs to unknowing couriers or "blind mules." See United Murillo, 255 F. 3d

1169, 1176-77 (9th Cir. 2001) (unknowing drug courier testimony was admissible in a drug possession case to attack the defendant's defense that he was "simply an unknowing courier."); United States v. Campos, 217 F.3d 707, 712 (9th Cir. 2000) (unknowing drug courier testimony was admissible in a importation case). Expert testimony that drug traffickers do not entrust large quantities of drugs to unknowing transporters is not drug courier profile testimony. See United States v. Cordoba, 104 F.3d 225, 230 (9th Cir. 1997).

### (f) Structure of Drug Trafficking Operations

The Government does not intend to present expert testimony about the general structure of drug smuggling operations, including the division of labor and drug smuggling techniques. The Government reserves the right, however, to present such testimony if defendants open the door by, for example, raising the issue of lack of fingerprints taken from the vehicle or raising other door opening issues. See United States v. Pineda-Torres, 287 F.3d 860, 865 (9th Cir. 2002); United States v. Vallejo, 237 F.3d 1008, 1016, n.3, (9th Cir. 2001), as amended, 246 F. 3d 1150 (9th Cir. 2001); United States v. Alatorre, 222 F.3d 1098, 1100 n. 3 (9th Cir. 2000). That door may be opened through Defendant's cross-examination of the Government's witness, United States v. Beltran-Rios, 878 F.2d 1208, 1210-13 (9th Cir. 1989), or a defendant's introduction of negative profile testimony, namely, evidence suggesting that the defendant possesses certain characteristics inconsistent with an inference of guilt. United States v. Sotelo-Murillo, 887 F.2d 176, 183 (9th Cir. 1989).

### 2. Evidence Regarding Demeanor and Appearance Should Be Admitted

Evidence regarding a defendant's demeanor and physical appearance is admissible as circumstantial evidence that is helpful to the jury's determination as to whether a defendant knew drugs were concealed in the vehicle. Fed. R. Evid. 701; United States v. Hursh, 217 F.3d 761, 768 (9th Cir. 2000) (jury may consider defendant's nervousness during questioning at a port of entry); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1144 (9th Cir. 2000) (it is within the ordinary province of jurors to draw inferences from an undisputed fact such as a defendant's nervousness at Calexico Port of Entry); United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir. 1990) (jury could infer guilty knowledge from a defendant's apparent nervousness and anxiety during airport

1 inspection); United States v. Lui, 941 F.2d 844, 848 (9th Cir. 1991) (jury could consider guilty
2 knowledge from a defendant's acting disinterested during airport inspection); United States v.
3 Mastberg, 503 F.2d 465, 470 (9th Cir. 1974) ("under the modern, and probably majority, view, a lay
4 witness may state his opinion that a person appeared nervous").  If the testimony regarding "a
5 combination of circumstances and appearances which cannot be adequately described and presented
6 with the force and clearness as they appeared to the witness, the witness may state his impressions
7 and opinions based on what he observed." United States v. Yazzie, 976 F.2d 1252, 1255 (9th Cir.
8 1992) (quoting United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982).

Here, Government officers and agents may properly testify to Defendants' behavior, demeanor, and physical appearance, as they have personal knowledge based upon their observations of Defendants.  The Government witnesses should be allowed to testify regarding Defendants' demeanor and appearance during their encounters with Defendants.

### 3. The Court Should Admit 609 Evidence

Federal Rule of Evidence 609 provides that evidence that an accused has been convicted of a crime punishable by imprisonment in excess of one year "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial value to the accused." United States v. Martinez-Martinez, 369 F.3d 1076, 1088 (9th Cir. 2004).  In United States v. Cook, 608 F.2d 1175, 1185 n.8 (9th Cir. 1979) (en banc), overruled on other grounds, Luce v. United States, 469 U.S. 38 (1984), the Ninth Circuit set forth a five-factor test for balancing the relative probativeness and unfair prejudice of a prior conviction. Under this five-factor test, this court should consider: (1) the impeachment value of the prior crime; (2) the temporal relationship between the conviction and the defendant's subsequent criminal history; (3) the similarity between the past and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of the credibility issue. Id.  This court need not analyze each of the five factors explicitly. See United States v. Jimenez, 214 F.3d 1095, 1098 (9th Cir. 2000).

If Defendant Rhett chooses to testify, his credibility will be a central issue in the case and Defendant's character for honesty is a factor that should be carefully weighed by the Court. The importance of Defendant's testimony is crucial in a case such as this, where Defendant would

presumably be called to testify only if he intended to claim that: (1) he lacked knowledge of the drugs in the vehicle he was driving into this country.  If Defendant chooses to testify at trial, the United States should be allowed to demonstrate Defendant's lack of trustworthiness by utilizing his prior conviction for impeachment purposes.

In 2000, well within the ten year period, Defendant Rhett was convicted of a felony intoxicated assault with a vehicle/serious bodily injury in violation of Texas Penal Code Section 49.07 and was sentenced to 10 years in jail.  Accordingly, the United States should be allowed to introduce evidence of Defendant Rhett's prior conviction under Rule 609 if Defendant elects to testify at trial.

### 4. This Court Should Preclude Reference To Defendants' Health, Age, Education and Potential Punishment

Evidence of, and thus argument referring to, a defendant's health, age, education and potential punishment is inadmissible and improper.  Fed. R. Evid. 402 provides that "[e]vidence which is not relevant is not admissible." Rule 403 provides further that, even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2003 Edition).  Additionally, [i]t has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991); see Shannon v. United States, 512 U.S. 573, 579 (1994)(jury should be instructed to reach its verdict without regard to the sentence that might be imposed).

Reference to either of the Defendants' health, age, finances, education and potential punishment may be relevant at sentencing.  At trial, however, such reference is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification.

### 5. The Court Should Preclude Self-Serving Hearsay

An attempt by either Defendant to prove his or her own statements through the testimony of another witness would be impermissible, because those statements are inadmissible hearsay. Defendant cannot rely upon Rule 801(d)(2), because he or she is the proponent of the evidence and

because the evidence is not being offered against him. Defendant would simply be seeking to have self-serving hearsay brought before the jury without the benefit of cross-examination by the Government. See United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988) (per curiam). While a defendant is certainly entitled to invoke his or her Fifth Amendment right to remain silent at trial, Defendant is not also entitled to also present self-serving hearsay to the jury without cross-examination. See Id. ("It seems obvious defense counsel wished to place Fernandez's statement to Bateman before the jury without subjecting Fernandez to cross-examination, precisely what the hearsay rule forbids."). Nor can either Defendant rely upon Rule 801(d)(1)(B) concerning prior consistent statements. A prior consistent statement is not admissible if it is introduced in the absence of impeachment. United States v. Navarro-Varelas, 541 F.2d 1331, 1334 (9th Cir. 1976). Defendant cannot rely upon the state of mind exception under Rule 803(3) because that is a limited hearsay exception that "does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind." Emmert, 829 F.2d at 810 (quoting United States v. Cohen, 631 F.2d 1223, 1225 (5th Cir. 1980)).

### 6.    The Court Should Preclude Any Expert Testimony For Either Defendant

The Government, pursuant to Federal Rules of Criminal Procedure 16(b) and 26.2, requested that Defendants disclose to the Government all exhibits and documents which that Defendant intends to introduce as evidence in his or her case-in-chief at trial or which were prepared by a witness whom the Defendant intends to call at trial. To date, neither Defendant has provided neither notice of any expert witness, nor any reports by expert witnesses. Accordingly, Defendants should not now be permitted to introduce expert testimony.

If, however, the Court determines that either Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or

that the proposed testimony would assist the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.), cert. denied, 530 U.S. 1268 (2000).

### 7. The Court Should Exclude Witnesses During Trial Except For The United States' Case Agent

The United States moves to exclude all witnesses from the courtroom during trial, with the exception of the United States' case agent. Both counsel should be entitled to be aided at counsel table by someone thoroughly versed in the facts of the case. Each defense counsel will be able to consult with their respective defendant in this regard, and therefore the Government should be afforded the same ability to consult with someone familiar with the facts of the case.

Under Fed. R. Evid. 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in this matter has been critical in moving the investigation forward to this point and is considered by the United States to be essential to the presentation. As such, the case agent's presence at trial is necessary to the United States.

### 8. The Court Should Preclude Evidence of Prior Good Acts

Defense counsel should be prohibited from arguing or eliciting testimony or evidence concerning either Defendant's prior good conduct. "Evidence of good conduct is not admissible to negate criminal intent." United States v. Camejo, 929 F.2d 610, 613 (11th Cir. 1991). Under Rule 404(b), evidence of other acts, including other "good" acts (or the mere absence of prior "bad" acts), are "not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Furthermore, even when character evidence is admissible, evidence of specific instances of conduct is not admissible unless "character or a trait of character of a person is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b); see also Michelson v. United States, 335 U.S. 469, 477 (1948) ("The witness may not testify about defendant's specific acts or courses of [good] conduct or his possession of a particular disposition or of benign mental and moral traits.").

In particular, testimony concerning a Defendant's lack of a recent criminal record is inadmissible, unless such character evidence is an essential element of the charge or defense. See,

e.g., United States v. Thomas, 134 F.3d 975, 979-80 (9th Cir. 1998) (testimony concerning defendant's lack of a prior criminal record admissible where defendant raises an entrapment defense, because defendant's character "is an 'essential element' of the defense" of entrapment; specifically, the prosecution must prove beyond a reasonable doubt that defendant was predisposed to commit the crime); see United States v. Barry, 814 F.2d 1400, 1404 (9th Cir. 1987)("the trial court acted within its discretion in concluding that this general evidence of an absence of criminal conduct was not probative of appellant's state of mind at the time he committed the crime"); United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989)(citing Barry with approval; "evidence of specific acts is generally inadmissible"); see also Government of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985)("testimony that one has never been arrested is especially weak character evidence; a clever criminal, after all, may never be caught").

Thus, the defense should be precluded from presenting evidence of any specific instances of good conduct.

### 9. The Court Should Preclude Evidence of Duress And Necessity

A pretrial motion is an appropriate means of testing the sufficiency of a proffered defense and precluding evidence thereof if the defense is found to be insufficient. Fed. R. Crim. P. 12(b) ("Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion."); United States v. Peltier, 693 F.2d 96, 97-98 (9th Cir. 1982) (per curiam); United States v. Shapiro, 669 F.2d 593, 596-97 (9th Cir. 1982); see also Fed. R. Crim. P. 12(e).

Generally, motions are capable of pretrial determination if they raise issues of law, rather than issues of fact. United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976). Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 118 S. Ct. 86 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, defendant must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that she was faced with a choice of evils and chose the lesser evil;

(2) that she acted to prevent imminent harm;

(3) that she reasonably anticipated a causal relationship between her conduct and the harm to be avoided; and

(4) that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

### 10. Renewed Motion for Reciprocal Discovery

Neither Defendant has produced any reciprocal discovery. The Government requests that each Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those of

Defendant. Neither Defendant has provided the Government with any documents or statements. Accordingly, the Government intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the Government.

Dated: December 20, 2007

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

*s/Lawrence A. Casper*

LAWRENCE A. CASPER
Assistant U.S. Attorney

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. 07CR2956-LAB |
| Plaintiff, ) | |
| v. ) | CERTIFICATE OF SERVICE |
| STEPHEN FRANCIS RHETT (1), ) JANET BERNICE FORBES (2), ) | |
| Defendants. ) | |

IT IS HEREBY CERTIFIED THAT:

I, Lawrence A. Casper, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of

UNITED STATES' MOTIONS IN LIMINE

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Michelle Betancourt**
**Attorney for defendant, Stephen Francis Rhett**

**Marc X. Carlos**
**Attorney for defendant Janet Bernice Forbes**

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

**1. None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 20, 2007.

*s/ Lawrence A. Casper*
LAWRENCE A. CASPER

07CR2956-LAB