1  KAREN P. HEWITT
   United States Attorney
2  LAWRENCE A. CASPER
   Assistant U.S. Attorney
3  California Bar No. 235110
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7455/(619) 235-2757 (Fax)
   Email: Lawrence.Casper@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8
                    UNITED STATES DISTRICT COURT
9
                  SOUTHERN DISTRICT OF CALIFORNIA
10
11                                    )  Criminal Case No. 07CR2956-LAB
                                      )  DATE:        January 2, 2008
                                      )  TIME:          12:00 p.m.
12  UNITED STATES OF AMERICA,         )
                                      )  GOVERNMENT'S  RESPONSE  AND
13                                    )  OPPOSITION TO DEFENDANT'S  MOTIONS
                                      )  TO:
14               Plaintiff,           )
                                      )  (1)   PRECLUDE 404(b) & 609 EVIDENCE;
15               v.                   )  (2)   ALLOW ATTORNEY VOIR-DIRE;
                                      )  (3)   PRECLUDE "MUG SHOTS"
16                                    )  (4)   PRECLUDE "AKA's";
                                      )  (5)   PRECLUDE DEMEANOR EVIDENCE;
17  STEPHEN FRANCIS RHETT (1),        )  (6)   PRECLUDE MARIJUANA EVIDENCE
                                      )        IN DEFENDANT'S BACKPACK;
18                                    )  (7)   PRECLUDE  LETTER  TO  FP&F
                                      )        REGARDING RETURN OF PROPERTY;
19               Defendant.           )  (8)   PRECLUDE  DEFENDANT'S  POST-
                                      )        ARREST VIDEOTAPED STATEMENT;
20                                    )  (9)   PRECLUDE   EXPERTS   OFFERED
                                      )        WITHOUT APPROPRIATE NOTICE;
21                                    )  (10)  EXCLUDE TESTIMONY REGARDING
                                      )        VALUE OF NARCOTICS;
22                                    )  (11)  EXCLUDE STRUCTURE EVIDENCE;
                                      )  (12)  PRECLUDE   MARIJUANA   FROM
23                                    )        COURTROOM;
                                      )  (13)  ORDER "SUPPLEMENTAL REPORTS"
24                                    )        & "TECS" PRODUCED;
                                      )  (14)  REQUIRE  THE  GOVERNMENT  TO
25                                    )        ESTABLISH CHAIN OF CUSTODY; and
                                      )  (15)  EXCLUDE POVERTY EVIDENCE
26  _____  )

27

28

# I.

## INTRODUCTION

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Lawrence A. Casper, Assistant United States Attorney, and hereby files its Response and Opposition to the defendant's above-referenced motions together with Statement of Facts and Memorandum of Points and Authorities.  This Response and Opposition is based upon the files and records of the case.

# II.

## STATEMENT OF THE CASE

**B.**    **Statement of Facts**

**1.**    **Primary Inspection: Defendant Rhett's Nervousness**

On September 23, 2007, at approximately 10:20 p.m., Defendants Stephen Francis Rhett (Rhett) and Janet Bernice Forbes (Forbes) entered the United States from Mexico through the San Ysidro Port of Entry in a white 1999 Ford F-250 with California license plate (3QOS602) towing a trailer also bearing California license plates (4JL1558).  Defendant Rhett was the driver and Defendant Forbes was the front seat passenger.

At primary inspection, Defendant Rhett told Customs and Border Protection Officer (CBPO) Fontanilla that they were not bringing anything from Mexico and that, instead, they went to Mexico to deliver building materials as donations to Mexico and that the "trailer is empty now."  At CBPO Fontanilla's request, Rhett opened the trailer.  Upon entering the trailer, CBPO Fontanilla noticed a new plywood floor in the trailer.  CBPO Fontanilla tapped the floor with his flashlight and it sounded soft but solid.  He also noticed that the underside of the floor appeared to have a space discrepancy.  CBPO Aguilar followed CBPO Fontanilla to back him up at the rear of the trailer.  CBPO again asked Defendant Rhett what he was bringing back from Mexico.  Rhett responded, "Nothing, sir, is there any problem?" CBPO Aguilar began to unscrew one screw on the floor, pried the corner of the floor and noticed a space discrepancy and discovered blue packages.  While CBPO Aguilar was removing one of the wooden floor panels, he noticed Defendant Rhett become so nervous that he proceeded to defecate on himself.

1  Defendants Rhett and Forbes were escorted to the security office and the vehicle and trailer were driven

2  to secondary for further inspection.

3  　　　　　**2.    <u>Secondary Inspection: Discovery of 508.10 Kilograms of Marijuana</u>**

4  　　　　　Upon further examination by CBPO Everett and her narcotics detector dog, the dog alerted to the

5  presence of a narcotics odor coming from the rear bumper area of the trailer.  Upon secondary inspection

6  by CBPO John Tobin, he observed that there were three saw horses, clothes and a case of water in the

7  trailer.  He also observed that the flooring was clean.  CBPO Tobin unscrewed the flooring, lifted it to

8  reveal the compartment and observed packages.  CBPO Tobin probed one package, which field tested

9  positive for marijuana.  Defendants were then placed under arrest.  A total of 108 packages were then

10 removed from the vehicle and 508.10 kilograms of marijuana (approximately 1117.82 pounds) were

11 seized.

12 　　　　　**3.    Defendant Stephen Rhett's Post-Miranda Statement**

13 　　　　　At approximately 1:00 a.m. on September 24, 2007, Defendant Rhett was read his <u>Miranda</u>

14 warnings, acknowledged his understanding and waived them orally and in writing and then provided a

15 videotaped statement to ICE Special Agent Daniel Duff; the statement was witnessed by ICE Special

16 Agent Christian Alva.  Defendant Rhett, who, as discussed above, defecated on himself, informed agents

17 that he had certain medical conditions; accordingly, before the interview the agents took appropriate

18 precautions and provided Defendant Rhett with a paper shirt and mask.  Defendant Rhett, who had $16

19 in his possession, stated he was unemployed and homeless; he did not have a driver's license in his

20 possession.  Defendant claimed that he was approached on the streets by "Jen," a white female and an

21 unidentified male, "Robert", who claimed to be from First Presbyterian Church in San Diego.  Rhett

22 claimed that they offered him $100 each way to transport building materials to Tijuana, Mexico.  Rhett

23 stated that he agreed to transport the materials for payment.

24 　　　　　Defendant Rhett claimed he received the F-250 and trailer at the First Presbyterian somewhere

25 in downtown San Diego but claimed he could not recall the address or location.  Upon receiving the

26 truck, Rhett claims he drove directly into Mexico where he met with an unknown man, whom he

27 followed to the "Flamingo Hotel" in Tijuana.  Rhett claimed he stayed the night in the hotel and met with

28 "Jen" and a Hispanic female, whom he identified as "Silvia", the following morning at approximately

1    6:00 a.m.  On the morning of his arrest, Defendant Rhett met with "Felipe" who is the father of "Jen."

2    Rhett claimed "Felipe" offered him $2,000 to smuggle four undocumented aliens into the United States.

3

4        Rhett stated that, after crossing the border, he was to drive the vehicle and trailer to Temecula and

5    park them at a gas station parking lot off of the I-15 and California Oaks.  Rhett claimed he did not know

6    his passenger.  He claimed to have observed the trailer get loaded and unloaded with building materials.

7    Rhett admitted he was suspicious but denied having knowledge of the marijuana in the trailer.  "Jen's"

8    direct connect telephone number was obtained from Defendant Rhett's cellular telephone.  The interview

9    concluded at approximately 1:54 a.m., after Rhett requested to consult with an attorney.

10        **4.    Defendant Janet Bernice Forbes' Post-<u>Miranda</u> Statement**

11        At approximately 3:00 a.m. on September 24, 2007 Defendant Janet Bernice Forbes was

12    interviewed in English by ICE Special Agent Duff and witnessed by Special Agent Alva.  Defendant

13    Forbes stated that she had been unemployed for four years and that she is transient but has a San Diego

14    mailing address, which she provided.  Forbes had $6.00 in her possession.  Defendant was read her

15    <u>Miranda</u> rights in English, acknowledged she understood her rights and waived them orally and in writing

16    before providing a videotaped statement.

17        Forbes stated that she was on methadone for heroin addiction and that she frequents Tijuana often

18    to receive her methadone treatments.  She claimed that, on the morning of her arrest, she went to Tijuana,

19    Mexico to receive one of her treatments.  She stated that, after receiving her treatment, she was

20    approached by "Felipe," who offered to pay her $500 to be a passenger in a vehicle that was to cross

21    illegal aliens into the United States.  She stated that she was picked up by a taxi and driven to a house

22    in Colonia Libertad, Tijuana, Mexico.  Upon her arrival, she observed approximately six to eight people

23    and met Defendant Rhett there.  She stated that she spent approximately twenty minutes at the house and

24    then left with Rhett and an unknown Hispanic male named "Jimmy."  She stated that they traveled

25    approximately 10-15 minutes to a gas station possibly in Rosarito, Mexico, where the white F-250 and

26    trailer were located.  Forbes stated that Defendant Rhett told her he had made seven previous trips across

27    the border but that this was his first time working for this family.

28    //

4

1      Upon receiving the F-250 and trailer, Rhett got into the vehicle with her and Jimmy; Jimmy rode

2  with them for a little while until Jimmy told Rhett that it was time for Jimmy to get out.  Forbes stated

3  that Defendant Rhett was receiving numerous Nextel calls from a woman identified as "Jen." Forbes said

4  "Jen" was requesting that Rhett call her back after they crossed the border.  While they were in line to

5  enter the United States at the port of entry, Jen was calling Rhett every two minutes.  She also claimed

6  to have heard Jen tell Rhett that he needed to move over a few lanes to cross or they would be sent to

7  secondary; they were, however, unable to change lanes because of the trailer.  Forbes said that Rhett told

8  her that the previous time he crossed he needed help from the previous female passenger to lower the

9  trailer gate.

10      Defendant Forbes claimed she thought she was transporting undocumented aliens and believed

11  she would receive her $500 payment in Mexico.  She denied knowledge of the marijuana and the

12  interview concluded at approximately 4:00 a.m.

13        **5.     Defendants' Criminal Histories**

14      Both Defendants have lengthy criminal histories, including multiple prior arrests and/or

15  convictions for narcotics related offenses.

16        (a)     Stephen Rhett

17      On October 19, 2000 Defendant Rhett was convicted in the 299th District Court in Austin, Texas

18  of a felony intoxicated assault with a vehicle/serious bodily injury in violation of Texas Penal Code

19  Section 49.07 and was sentenced to 10 years in jail; his probation was subsequently revoked in January

20  2003 when he was sentenced to 4 years in jail.  Defendant Rhett also has a May 2001 misdemeanor

21  conviction for possession of a controlled substance in Travis County, Texas in violation of Texas Health

22  & Safety Code Section 481.119(b).  In addition, on January 28, 2003, Defendant Rhett was convicted

23  of violating Texas Penal Code Section 22.01(A)(1), a Class A misdemeanor assault causing bodily injury.

24  On September 24, 1999, Defendant Rhett was convicted of a misdemeanor assault/family violence and

25  sentenced to 45 days in jail.

26        (b)     Janet Forbes

27      On January 23, 1992 Defendant was convicted of violating California Penal Code Section

28  01:647(A) for Disorderly Conduct: Solicit Lewd Act and 01:647(B) for prostitution. On January 3, 1992,

1  this Defendant was convicted of aiding and abetting an illegal entry for which she was sentenced to 60

2  days jail.  On March 3, 1985, this Defendant was convicted of possession of a controlled substance in

3  violation of California HS 11377 and was sentenced to 21 days jail and 12 months probation.  Defendant

4  Forbes also has numerous theft and other convictions dating back to the mid-1980's.

5                                              **III.**

6                                    **DEFENDANT'S MOTIONS**

7       **A.    THE UNITED STATES DOES NOT INTEND TO INTRODUCE 609 EVIDENCE
              AS TO DEFENDANT RHETT AND HAS PROPERLY NOTICED 404(B)**

8       **EVIDENCE AS TO THIS DEFENDANT**

9           The United States does not presently intend to introduce 609 evidence as to Defendant Rhett; if

10  additional information comes to the United States' attention to change this determination, the United

11  States will provide further notice to Defendant.  In regard to 404(b), although the United States believes

12  that the evidence is inextricably interwoven with the instant offense and should not be considered as

13  404(b), the United States has given 404(b) notice regarding the Defendant's possession of an uncharged

14  quantity of marijuana contained in a backpack that was claimed as personal property by Defendant Rhett,

15  who also informed agents that he did not personally use marijuana and had not done so for years.  The

16  United States addressed the admissibility of this evidence in Section F below**.**

17
        **B.    THE GOVERNMENT DOES NOT OPPOSE ATTORNEY CONDUCTED VOIR-
18            DIRE**

19          The United States has no objection to attorney-conducted voir-dire, provided it is afforded the

20  same amount of time provided to Defendant.

21      **C.    THE  GOVERNMENT  DOES  NOT  INTEND  TO  INTRODUCE  THE
              PHOTOGRAPHS OF DEFENDANT TAKEN ON THE DAY OF HIS ARREST**

22      **UNLESS THEY BECOME RELEVANT**

23          Rule 401 defines "relevant evidence" as:

24                  evidence having any tendency to make the existence of any fact that is of
                  consequence to the determination of the action more probable or less probable that
25                  it would be without the evidence.

26  Fed. R. Evid. 401.  Rule 402 states that evidence "which is not relevant is not admissible."  Fed. R. Evid.

27  402.  At the moment, it is unclear why Defendant's photograph would be relevant.  However, if it

28  becomes relevant, the United States should be permitted to introduce it (i.e., to establish his identity).

                                              6

1

2
### D.    THE GOVERNMENT DOES NOT INTEND TO INTRODUCE AKA's OF DEFENDANT UNLESS THEY BECOME RELEVANT

3      Unless Defendant challenges his identity in some way in this case or an AKA or alias of

4    Defendant otherwise becomes relevant, the Government does not anticipate introducing Defendant

5    Stephen Rhett's AKA's or aliases.

6

7
### E.    EVIDENCE REGARDING DEFENDANT'S DEMEANOR AND PHYSICAL APPEARANCE IS ADMISSIBLE

8      Evidence regarding Defendant's demeanor and physical appearance is admissible as

9    circumstantial evidence helpful to the jury's determination of whether the defendant knew drugs were

10   concealed in the trailer he was driving.  See Fed. R. Evid. 701; United States v. Romero-Avila, 210 F.3d

11   1017, 1023 (9th Cir. 2000) (identifying defendant's nervousness at the border as part of the "strong

12   independent evidence of defendant's guilt"); United States v. Hursh, 217 F3d. 761, 767-68 (9th Cir.

13   2000) (nervousness during border questioning at primary inspection and later nervousness while car was

14   being inspected at secondary was additional evidence of knowledge); United States v. Klimavicius-

15   Viloria, 144 F. 3d 1249, 1263-1265 (9th Cir. 1998) (the crew's demeanor, such as becoming less

16   cooperative when the Coast Guard decided to search a tank where bales of cocaine were later found, was

17   relevant to show knowing participation); United States v. Lui, 941 F.2d 844, 848, 848 n.2 (9th Cir. 1991)

18   (defendant's actions both before and after discovery of drugs, such as acting disinterested and not helping

19   in the search, and, when the inspector found the drugs, stepping away without attempting to see to what

20   the inspector was referring, supported a finding that the defendant was guilty); United States v. Barbosa,

21   906 F.2d 1366, 1368 (9th Cir. 1990) (defendant's apparent nervousness and anxiety during inspection

22   was valid circumstantial evidence of knowledge of concealed narcotics).

23      In fact, Defendant's physical appearance; the fact that, at the moment when the marijuana was

24   about to be discovered beneath the floor board in the trailer, the Defendant defecated upon himself; as

25   well as the agents' observations of the Defendant's demeanor are significant, if not critical, evidence of

26   the Defendant's knowledge of the more than 1000 pounds of marijuana in the trailer that he was

27   transporting from Mexico into the United States.  The jury should be permitted to consider and evaluate

28   that evidence.

7

1    **F.    DEFENDANT'S MOTION TO PRECLUDE MARIJUANA EVIDENCE IN DEFENDANT'S BACKPACK SHOULD BE DENIED**

2

3    Defendant, who is charged both with the importation and possession with intent to distribute in

4    excess of 508 kilograms of marijuana in the trailer attached to the vehicle he was driving, was in

5    possession of a backpack when he was arrested at the port of entry in this case; that backpack had a

6    quantity of  marijuana which was later discovered during a viewing of the vehicle.  The substance was

7    field tested by the case agent and tested positive for marijuana.  The presence of this marijuana may be

8    offered as evidence that is "inextricably intertwined" with the evidence of Defendant's guilt in the instant

9    offense. The most common type of evidence that is not subject to Rule 404(b) involves evidence that is

10    not of an extrinsic act, but rather is of an intrinsic act intertwined with the charged offense or offenses.

11    The Ninth Circuit has consistently held that evidence relating to uncharged, inextricably

12    intertwined acts do not fall within the purview of Rule 404(b).  See e.g., United States v. Beckman, 298

13    F.3d 788, 793 (9th Cir. 2002) (admitting evidence of prior drug runs by a defendant, as testified to by his

14    co-conspirator, so that the prosecutor may offer a "coherent and comprehensible story regarding the

15    commission of the crime"); United States v. King,  200 F.3d 1207, 1214 (9th Cir. 1999) (finding that

16    testimony of a former business associate of defendant admissible to explain the nature of defendant's

17    business scheme in a bank fraud case); see also United States v. Soliman, 813 F.2d 277, 279

18    (9th Cir. 1987) ("Evidence should not be treated as other crimes evidence when the evidence concerning

19    the other act and the evidence concerning the crime charged are inextricably intertwined.") (internal

20    quotations and citations omitted).

21    In United States v. Vizcarra-Martinez, 66 F.3d 1006 (9th Cir. 1995), the Ninth Circuit explained

22    that inextricably intertwined evidence that does not fall under Rule 404(b)'s umbrella typically come in

23    two forms.  First, some "other act" evidence is admissible because it constitutes a part of the transaction

24    that serves as the basis for the criminal charge.  See id. at 1012; see also United States v. Williams, 989

25    F.2d 1061, 1070 (9th Cir. 1993) ("[T]he policies underlying rule 404(b) are inapplicable when offenses

26    committed as part of a single criminal episode become other acts simply because the defendant is indicted

27    for less than all of his actions.").  Second, "other act" evidence may be admitted when it is necessary to

28    offer a coherent and comprehensible story regarding the commission of the crime.  See Vizcarra-

1   Martinez, 66 F.3d at 1012-13; see also United States v. Daly, 974 F.2d 1215, 1216 (9th Cir. 1992)

2   (admitting evidence regarding a shoot-out between the defendant and police as inextricably intertwined

3   to evidence of the crime alleged: felon in possession of a firearm).  Although not subject to Rule 404(b),

4   both types of inextricably intertwined evidence described in Vizcarra-Martinez may require pre-trial

5   notice under Rule 16.  See, e.g., Fed. R. Crim. P. 16(a)(1)(E) (requiring disclosure of papers, documents,

6   in the Government's possession if the Government intends on using the items in its case-in-chief).  Such

7   notice was given in this case.  Moreover, the presence of the marijuana in the backpack constitutes a part

8   of the transaction that serves as the basis for the criminal charge; moreover, such marijuana is necessary

9   to enable the United States to present a coherent and comprehensible story concerning the Defendant's

10  commission of the crimes of possession with intent to distribute and importation of the marijuana in this

11  case.

12          Even under a 404(b) analysis, this evidence tends to prove the Defendant's intent as well as

13  knowledge; it is plainly not too remote in time; it may be proven with evidence sufficient to show it was,

14  in fact, committed; and it is similar to the offense charged.  Nor is it unduly prejudicial.  See United

15  States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002) (quoting United States v. Chea, 231 F.3d 531, 534

16  (9th Cir. 2000)); see also United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992) (restating test).

17  Finally, even if the Government does not bring this evidence out in its case-in-chief, such evidence may,

18  of course, become relevant if Defendant Rhett chooses to testify in this case.

19
20          **G.      DEFENDANT'S MOTION TO PRECLUDE THE LETTER FROM DEFENDANT
                       TO FINES, PENALTIES AND FORFEITURE SHOULD BE DENIED.**

21          Defendant seeks to preclude the United States from using or introducing a letter that Defendant

22  admittedly authored and sent to the Government.  Plainly, such a letter would, if relevant, be admissible

23  as an admission of a party opponent under Fed. R. Evid. 801(d)(2).  In fact, Defendant makes

24  incriminating statements in that letter regarding the crime in this case ("I was used and I feel stupid for

25  it.").  Moreover, certain of his statements may be inconsistent with his post-arrest statement in this case

26  and/or testimony he may give at trial should he testify.  Consequently, the Court should not preclude this

27  letter.  In fact, the ultimate admissibility cannot and should not be made until the time of trial when the

28  letter is placed in context.

9

1

2

## H.   THE COURT SHOULD PRECLUDE DEFENDANT'S EFFORT TO EXCLUDE HIS POST-ARREST STATEMENT

3      Defendant contends that the fact that he was wearing a paper thin gown and mask at the time of

4  his post-arrest statement should prevent the United States from showing any portion of his videotaped

5  statement to the jury and that the United States should be limited to using only audio of the statement.

6  First, Defendant's reliance on Estelle v. Williams, 425 U.S. 504-505 (1976) is misplaced.  The Supreme

7  Court's opinion was limited to requiring a defendant to appear at trial in prison or jail clothing and

8  plainly did not encompass the type of hospital garb Defendant was wearing in this case.  Moreover, the

9  Defendant is expected to be present at trial and, of course, is not expected to be wearing the mask or

10 gown.  Thus, Estelle v. Williams, 425 U.S. at 505, has no bearing on this case.

11     Defendant's claim that his statement will not be on an "equal footing" with that of the co-

12 defendant is also misplaced as she was also wearing a mask during her interview due to her own reported

13 medical condition.  Moreover, if the United States decides to show some or all of the videotaped

14 statement at trial, the jury is certainly entitled to observe the facial expressions and/or body movements

15 of this Defendant (as well as the co-defendant) so that it may fully evaluate each defendant's credibility.

16 Accordingly, Defendant's motion should be denied.

17

18

## I.    THE GOVERNMENT SHOULD BE PERMITTED TO INTRODUCE EXPERT TESTIMONY

19     Defendant moves to exclude the Government's experts' testimony because he contends that the

20 basis of their respective expert opinions are inadequately disclosed.  In fact, the Government's disclosure

21 informs the defense and fully comports with the requirements of Fed. R. Crim. P. 16(a)(1)(G).   First,

22 with regard to the chemist, the Government has provided a copy of the DEA-7 report and the chemist's

23 resume, which fully outlines his experience and the bases for his opinion that the substance tested was

24 marijuana.  With regard to the value expert noticed by the Government, the Government has also

25 explicitly detailed the bases of his opinions in its disclosure and the defense is certainly familiar with the

26 relevant materials.  For example, the expert will rely upon his experience as a narcotics enforcement

27 agent, including interactions with confidential informants and cooperating witnesses, and the experiences

28 of fellow agents in that regard.  Disclosure of the individual identities and reports from those encounters

1   would likely jeopardize the safety of those individuals, and negatively impact ongoing investigations,

2   not to mention thwarting important law enforcement goals in developing confidential informants and

3   cooperating witnesses.  The United States contends that reports detailing the individual conversations

4   or case details of the informants and witnesses which serve as the basis for the expert's opinion are not

5   subject to disclosure, much as a doctor's entire patient records are not subject to disclosure, even though

6   the doctor presumably relies upon his experience in his years of practice to formulate the opinion testified

7   to at trial.  Rule 705 and the case law require that the *bases* of the expert opinion be identified and

8   disclosed.  The government's expert will comply with that requirement.

9        United States v. Zanfordino, 439 F. Supp. 429 (S.D.N.Y. 1993), the authority cited by Defendant,

10  is not to the contrary.  There, the district court addressed discovery requests for documents prepared or

11  relied upon in analyzing shoeprint evidence in that case, documents the court recognized would become

12  Jencks material once the expert testified.  See id. at 433.  Here, reports from other cases which form part

13  of the basis of the expert's expected expertise are not Jencks material as to his testimony regarding this

14  case.  Further, as the district court recognized, in Zanfordino the disclosure did "not pose any risks to

15  witnesses or to ongoing investigation."  Id. at 432.  Plainly that is not the case here.

16

17  **J.    THE GOVERNMENT SHOULD BE PERMITTED TO INTRODUCE TESTIMONY REGARDING THE VALUE OF THE NARCOTICS**

18       The United States has fully addressed the need for and propriety of introducing testimony

19  regarding the value of the narcotics in its own Motion in Limine to Admit Government Expert Testimony

20  and hereby incorporates that discussion here.  The Government has provided Defendants with proper

21  notice of this expert testimony.  Moreover, the wholesale and retail values of the marijuana seized in this

22  case are figures which have relevance to Defendant's knowledge and intent to distribute.  See United

23  States v. Mendoza-Paz, 286 F.3d 1104, 1111-12 (9th Cir. 2002) (narcotics valuation expert properly

24  admitted at trial); United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (finding that price and

25  quantity of narcotics is relevant to defendant's intent to distribute).  The Ninth Circuit has specifically

26  upheld the admissibility of expert testimony as to the retail value of drugs.  See United States v. Ogbuehi,

27  18 F.3d 807, 812 (9th Cir. 1994) ("DEA agents can testify as to the street value of narcotics.").

28  //

11

1    The retail and wholesale values of the marijuana seized in this case have relevance to Defendant's

2   knowledge and intent to distribute.  See United States v. Mendoza-Paz, 286 F.3d 1104, 1111-12 (9th Cir.

3   2002) (narcotics valuation expert properly admitted at trial); United States v. Savinovich, 845 F.2d 834,

4   838 (9th Cir. 1988)  (finding that price and quantity of narcotics is relevant to defendant's intent to

5   distribute).  The Ninth Circuit has upheld the admissibility of expert testimony as to the retail value of

6   drugs.  See United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994)("agents can testify as to the street

7   value of narcotics").  Nor is such testimony more prejudicial than probative.

8
9            **K.      THE GOVERNMENT WILL ONLY INTRODUCE STRUCTURE EVIDENCE IF
                        DEFENDANT OPENS THE DOOR**

10           As detailed in the Government's Motion in Limine to Admit Government Expert Testimony, the

11   Government does not presently intend to present expert testimony about the general structure of drug

12   smuggling operations, including the division of labor and drug smuggling techniques.  If, however, either

13   Defendant attempts to introduce any of those categories of evidence during opening statement,

14   cross-examination, in Defendant's case-in-chief, or Defendant otherwise opens the door, the United

15   States reserves the right to present such testimony.  See United States v. Pineda-Torres, 287 F.3d 860,

16   865 (9th Cir. 2002); United States v. Vallejo, 237 F.3d 1008, 1016, n.3, (9th Cir. 2001), as amended, 246

17   F. 3d 1150 (9th Cir. 2001); United States v. Alatorre, 222 F.3d 1098, 1100 n. 3 (9th Cir. 2000).  Once

18   the door has been opened, such testimony would certainly be proper to help the jury understand the

19   evidence in the case, to put that evidence in a relevant context and to ensure the jury does not decide the

20   case in a vacuum.  Plainly, the evidence is relevant to the question whether Defendant knew of the drugs

21   in the vehicle in which she traveled into the United States.  See, e.g., United States v. Murillo, 255 F.3d

22   1169, 1176-78 (9th Cir. 2001).

23           Similarly, the United States does not intend to introduce drug courier evidence during its

24   case-in-chief.  See, e.g., Reid v. Georgia, 448 U.S. 438, 440 (1979) (defining "drug courier profile"

25   evidence); United States v. Lui, 941 F.2d 844, 846 (9th Cir. 1991).   Expert testimony that drug

26   traffickers do not entrust large quantities of drugs to unknowing transporters is not, however, drug courier

27   profile testimony.  See United States v. Cordoba, 104 F.3d 225, 230 (9th Cir. 1997).  Moreover, the

28   United States reserves the right to introduce expert testimony about the modus operandi of

12

1 drug-trafficking organizations, testimony about vehicle-registration procedures, mules, and drug profiles

2 if either Defendant opens the door to any of those categories of evidence during opening statement,

3 cross-examination, or Defendant's case-in-chief. See Vallejo, 237 F.3d at 1016; Alatorre, 222 F.3d at

4 1100 n.3 (structure and organizational testimony proper because Alatorre raised the fingerprints issue);

5 United States v. Beltran-Rios, 878 F.2d 1208, 1212-13 (9th Cir. 1989) (testimony about type of

6 individual used as drug "mule" admissible where defense counsel opens door).

7      **L.    THE CONTRABAND SHOULD BE ALLOWED IN THE COURTROOM**

8           The United States should be allowed to introduce the seized narcotics as evidence and display that

9 evidence to the jury. Seized narcotics, whether in packages or in bulk, are admissible as exhibits at trial

10 and may be displayed to the jury. United States v. Ramos Rodriguez, 926 F.2d 418, 420-21 (5th Cir.

11 1991). In Ramos Rodriguez, the defendant objected on the first day of trial to the Government displaying

12 two packages of marijuana to the jury, and then objected on the second day of trial to the Government

13 displaying 227 pounds of marijuana to the jury. The Fifth Circuit found that both objections were

14 properly overruled, because the evidence was admissible and did not violate the defendant's right to a

15 fair trial. Id. at 420-21. The Ramos Rodriguez court specifically found that the defendant's reliance on

16 Federal Rule of Evidence 403 was misplaced, holding, "Rule 403, without question, is to authorize the

17 exclusion of inflammatory or prejudicial evidence. Ramos does not argue, however, that the marijuana

18 should have been excluded; rather, he argues that the jury should not have been allowed to see the

19 narcotic throughout the trial. This Court can find no error under Rule 403." Id. at 421 (emphasis in

20 original).

21           Like the defendant in Ramos Rodriguez, Defendant does not argue the seized narcotics here are

22 inadmissible as evidence under Rule 403, only that they should not be displayed to the jury. Rule 403

23 does not allow for this, and the jury is entitled to view all of the evidence properly received by the Court.

24 Therefore, Defendant's motion to exclude the contraband from the courtroom should be denied.

25 //

26 //

27 //

28 //

13

1

2

**M.    THE GOVERNMENT WILL COMPLY WITH ITS DISCOVERY OBLIGATIONS REGARDING SUPPLEMENTAL REPORTS AND "TECS"**

3    Defendant requests "supplemental reports." The United States continues to comply with its

4  ongoing discovery obligations. The United States is not currently aware of any supplemental reports in

5  this case.

6    There are no TECS hits on the license plates on the vehicle being driven by Defendant or the

7  attached trailer at the time of Defendant's arrest in this case. Accordingly, insofar as Defendant's motion

8  pertains to these vehicles, the motion should be denied as moot. The United States, however, objects to

9  producing any TECS hits that relate to the Defendant and not to the license plates that were on

10  Defendant's vehicles at the time of his arrest. Such TECS records are not material to any issue in the

11  case.

12    Evidence that is exculpatory, or which will lead to exculpatory evidence, or which is useful for

13  impeaching government witnesses is covered under Rule 16. See e.g., United States v. McCrane, 547

14  F.2d 204 (3d Cir. 1976). To obtain discovery under Rule 16, a defendant must make a prima facie

15  showing of materiality. United States v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984); United States v.

16  Cadet, 727 F.2d 1453, 1468 (9th Cir. 1984). A defendant must make a specific request for an item and

17  articulate how it is helpful to the defense. See, United States v. Olano, 62 F.3d 1180, 1203 (9th Cir.

18  1995). Defendant must show "more than that the [item] bears some abstract logical relationship to the

19  issues in the case. . . There must be some indication that the pretrial disclosure of the [item] would . .

20  .enable[] the defendant significantly to alter the quantum of proof in his favor." United States v. Ross,

21  511 F.2d 757, 762-63 (5th Cir. 1975).

22    Any TECS records concerning crossings by Defendant separate from those with the same license

23  plates on the vehicle and trailer in this case are not material to the defense in this case. TECS records

24  pertaining to the defendant but not relating to the license plates on the vehicle at the time it crossed into

25  the United States have no bearing on the defendant's proffered justification for pursuing these records.

26  The mere fact that defendant may be able to craft a more consistent story given access to possible

27  impeachment evidence does not make the documents themselves relevant or material. United States v.

28  Gonzalez-Rincon, 36 F.3d 859, 865 (9th Cir. 1994); see United States v. Gleason, 616 F.2d 2, 25 (2d Cir.

14

1979) (The Government is not obligated by Rule 16(a) to anticipate every possible defense, assume what the defendant's trial testimony . . . will be, and then furnish him with otherwise irrelevant material that might conflict with his testimony."). Nor does Rule 16 require the Government to disclose rebuttal evidence intended for use against a line of defense at trial. See United States v. Delia, 944 F.2d 1010, 1017-18 (2d Cir. 1991)(government is not required to disclose rebuttal evidence which it intends to use against a proposed line of defense). Defendant has not made any showing that these TECS records will be material to his defense. Accordingly, Defendant's motion for these TECS records should be denied.

**N.    THE UNITED STATES WILL COMPLY WITH THE RULES OF EVIDENCE**

The United States understands and will comply with its obligations under the Federal Rules of Evidence in regard to chain of custody. Defendant has not set forth a proper motion in limine.

**O.    THE GOVERNMENT DOES NOT INTEND TO INTRODUCE POVERTY EVIDENCE**

Unless financial means somehow become relevant through the testimony of a defendant or a defense witness, the Government does not intend on presenting poverty evidence. Therefore, the Defendant's motion is moot.

**V.**

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant's motions except where unopposed.

DATED: December 26, 2007

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

*s/Lawrence A. Casper*
LAWRENCE A. CASPER
Assistant U.S. Attorney
Attorneys for Plaintiff
United States of America
Email: lawrence.casper@usdoj.gov

15

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No.07cr2956-LAB |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| STEPHEN FRANCIS RHETT (2), | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

 I, LAWRENCE A. CASPER, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

 I am not a party to the above-entitled action.  I have caused service of Government's Response and Opposition to **Defendant's Motions in Limine**, together with statement of facts and memorandum of points and authorities on the following by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

 1. Michelle Betancourt
   Federal Defenders, Inc.
   Attorney for Defendant

 I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

 1. N/A

the last known address, at which place there is delivery service of mail from the United States Postal Service.

 I declare under penalty of perjury that the foregoing is true and correct.

 Executed on December 26, 2007.

     *s/Lawrence A. Casper*
     LAWRENCE A. CASPER