1  KAREN P. HEWITT
   United States Attorney
2  LAWRENCE A. CASPER
   California State Bar No. 235110
3  Assistant U.S. Attorney
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7455
   Facsimile: (619) 235-2757
6
   Attorneys for Plaintiff
7  United States of America

8

9                    UNITED STATES DISTRICT COURT

10                  SOUTHERN DISTRICT OF CALIFORNIA

11  UNITED STATES OF AMERICA        )   Criminal Case No. 07CR2956-LAB
                                    )
12              Plaintiff,          )
                                    )
13         v.                       )   GOVERNMENT'S TRIAL
                                    )   MEMORANDUM
14  STEPHEN FRANCIS RHETT,          )
                                    )
15              Defendant.          )   Date:      January 8, 2008
                                    )   Time:      9:00 a.m.
16                                  )   Honorable: Larry A. Burns
                                    )
17  _____ )

18         COMES NOW the plaintiff, United States of America, by and through its counsel, Karen P.

19  Hewitt, United States Attorney, and Lawrence A. Casper, Assistant U.S. Attorney, and respectfully

20  submits the following Trial Memorandum.

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

# I.

## STATEMENT OF THE CASE

### A.    INDICTMENT

A federal grand jury on October 30, 2007 returned a two-count Indictment charging Defendants Stephen Francis Rhett and Janet Bernice Forbes with: (1) importing approximately 508.10 kilograms (1117.82 pounds) of marijuana, in violation of Title 21, United States Code §§ 952 and 960 and aiding and abetting in that offense in violation of Title 18, United States Code, § 2, and (2) possessing with the intent to distribute approximately 508.10 kilograms (1117.82 pounds) of marijuana in violation of 21 United States Code § 841(a)(1), and aiding and abetting in that offense in violation of Title 18, United States Code § 2.  Defendants each entered a not guilty plea before the Magistrate Judge on that same day.  On January 7, 2008, the Government dismissed the charges against Defendant Forbes.

### B.    TRIAL STATUS

A jury trial is scheduled for Tuesday, January 8, 2008 at 9:00 a.m. before the Honorable Larry A. Burns.  The United States expects its case-in-chief to last approximately one day.

### C.    DEFENSE COUNSEL

Michelle Betancourt, Federal Defenders, Inc. has been appointed to represent Defendant Stephen Francis Rhett.

### D.    DEFENDANT'S CUSTODY STATUS

Defendant is currently in custody.

### E.    INTERPRETER

The United States does not anticipate that any of its witnesses will require the assistance of an interpreter.  Defendant is not expected to require an interpreter for trial.

### F.    JURY WAIVER

Defendant has not filed a jury waiver.

### G.    PRE-TRIAL MOTIONS

On November 19, 2007, Defendant Stephen Rhett filed his motions to dismiss the indictment in this case due to improper grand jury instructions; to suppress statements; to preserve and inspect evidence; and to compel discovery.  On December 3, 2007, the United States filed its response in

1  opposition to Defendant Rhett's motions and its motion for reciprocal discovery.  On December 10,

2  2007, the Court granted Defendant Forbes' motion to join Defendant Rhett's motions.  On the same day,

3  the Court denied the motion to dismiss statements due to improper grand jury instructions; denied the

4  motion to preserve evidence; found the motion to compel discovery moot and denied without prejudice

5  the motion for leave to file further motions.  The Court granted the United States' motion for reciprocal

6  discovery.  On January 2, 2008, the Court resolved the Government's motions in limine as follows: (1)

7  allowing the Government to admit expert testimony and, if foundation is properly established, permitting

8  the Government's value expert to opine regarding both the retail and wholesale value of the marijuana;

9  (2) permitting evidence of Defendant's demeanor and, in particular, evidence relating to Defendant's

10  defecation provided that the evidence establishes a temporal connection; (3) finding the motion

11  regarding Rule 609 evidence to be moot; (4) granting the motion to preclude reference to age, education

12  and punishment although, if relevant to the defendant's explanation for the defecation, health testimony

13  may be allowed; (5) granting the Government's motion to preclude self-serving hearsay; (6) inasmuch

14  as the defense intends to call no experts granting the Government's motion to preclude them; (7)

15  granting the motion to exclude witnesses except the case agent; (8) reserving ruling on the motion to

16  preclude evidence of prior good acts unless and until the defense attempts to introduce any such acts;

17  (9) granting the motion to preclude evidence of duress or necessity; and (10) granting the renewed

18  motion for reciprocal discovery.  As to Defendant Rhett's motions in limine, the Court (1) found the

19  motion to preclude 404(b) and 609 evidence moot as the Government does not intend to introduce such

20  evidence; (2) will allow each side five minutes of voir dire; (3) will allow evidence concerning the

21  marijuana in Defendant's backpack if the Government can introduce evidence showing that the

22  backpack was claimed by or belonged to the Defendant; (4) will permit the Government to play the

23  audiotape of Defendant Rhett's post-arrest statement (as opposed to the videotape); (5) will exclude

24  structure evidence; (6) will permit the Government to bring in a sample marijuana "brick" and the

25  laboratory samples; (7) will exclude poverty evidence; (8) will preclude a copy of the indictment from

26  being given to the jury; and (9) will not preclude the FP&F letter which the Government advised it does

27  not intend to introduce that letter in its case-in-chief.

28

07cr2956-LAB

1    **H.    STIPULATIONS**

2        The United States proposed to stipulate the substance found in the trailer attached to the Ford

3    F-250 vehicle that Defendant Rhett was driving was marijuana with a gross weight of 508.10 kilograms

4    (approximately 1117.82 pounds) but the parties have entered no stipulations.

5    **I.    DISCOVERY**

6        The United States has complied and will continue to comply with its discovery obligations.

7    Defendant has produced six photographs as reciprocal discovery.

8                                                        **II.**

9                                      **STATEMENT OF FACTS**

10    **A.    PRIMARY INSPECTION: Defendant Rhett's Nervousness**

11        On September 23, 2007, at approximately 10:20 p.m., Defendants Stephen Francis Rhett (Rhett)

12    and Janet Bernice Forbes (Forbes) entered the United States from Mexico through the San Ysidro Port

13    of Entry in a white 1999 Ford F-250 with California license plate (3QOS602) towing a trailer also

14    bearing California license plates (4JL1558).  Defendant Rhett was the driver and Defendant Forbes was

15    the front seat passenger.

16        At primary inspection, Defendant Rhett told Customs and Border Protection Officer (CBPO)

17    Fontanilla that they were not bringing anything from Mexico and that, instead, they went to Mexico to

18    deliver building materials as donations to Mexico and that the "trailer is empty now."  At CBPO

19    Fontanilla's request, Rhett opened the trailer.  Upon entering the trailer, CBPO Fontanilla noticed a new

20    plywood floor in the trailer.  CBPO Fontanilla tapped the floor with his flashlight, and it sounded soft

21    but solid.  He also noticed that the underside of the floor appeared to have a space discrepancy.  CBPO

22    Aguilar followed CBPO Fontanilla to back him up at the rear of the trailer.  CBPO again asked

23    Defendant Rhett what he was bringing back from Mexico.  Rhett responded, "Nothing, sir, is there any

24    problem?"  CBPO Aguilar began to unscrew one screw on the floor, pried the corner of the floor and

25    noticed a space discrepancy.  While CBPO Aguilar was removing one of the wooden floor panels, he

26    noticed Defendant Rhett become so nervous that he proceeded to defecate on himself; upon removing

27    the wooden panel, CBPO Aguilar found plastic wrapped packages.  Defendants Rhett and Forbes were

28

1   escorted to the security office and the vehicle and trailer were driven to secondary for further inspection.

2   **B.    SECONDARY INSPECTION: Removal of 508.10 Kilograms of Marijuana**

3   Upon further examination by CBPO Everett and her narcotics detector dog, the dog alerted to

4   the presence of a narcotics odor coming from the rear bumper area of the trailer. Upon secondary

5   inspection by CBPO John Tobin, he observed that there were three saw horses, clothes and a case of

6   water in the trailer. He also observed that the flooring was clean. CBPO Tobin unscrewed the flooring,

7   lifted it to reveal the compartment and observed packages. CBPO Tobin probed one package, which

8   field tested positive for marijuana. Defendants were then placed under arrest. A total of 108 packages

9   were then removed from the vehicle and 508.10 kilograms of marijuana (approximately 1117.82

10  pounds) were seized.

11  **C.    Defendant Stephen Rhett's Post-Miranda Statement**

12  At approximately 1:00 a.m. on September 24, 2007, Defendant Rhett was read his <u>Miranda</u>

13  warnings, acknowledged his understanding and waived them orally and in writing and then provided

14  a videotaped statement to ICE Special Agent Daniel Duff; the statement was witnessed by ICE Special

15  Agent Christian Alva. Defendant Rhett, who, as discussed above, defecated on himself, informed agents

16  that he had certain medical conditions; accordingly, before the interview the agents took appropriate

17  precautions and provided Defendant Rhett with a paper shirt and mask. Defendant Rhett, who had $16

18  in his possession, stated he was unemployed and homeless; he did not have a driver's license in his

19  possession. Defendant claimed that he was approached on the streets by "Jen," a white female and an

20  unidentified male, "Robert," who claimed to be from First Presbyterian Church in San Diego. Rhett

21  claimed that they offered him $100 each way to transport building materials to Tijuana, Mexico. Rhett

22  stated that he agreed to transport the materials for payment.

23  Defendant Rhett claimed he received the F-250 and trailer at the First Presbyterian somewhere

24  in downtown San Diego but claimed he could not recall the address or location. Upon receiving the

25  truck, Rhett claims he drove directly into Mexico where he met with an unknown man, whom he

26  followed to the "Flamingo Hotel" in Tijuana. Rhett claimed he stayed the night in the hotel and met

27  with "Jen" and a Hispanic female, whom he identified as "Silvia", the following morning at

28  approximately 6:00 a.m. On the morning of his arrest, Defendant Rhett met with "Felipe" who is the

1    father of "Jen." Rhett claimed "Felipe" offered him $2,000 to smuggle four undocumented aliens into

2    the United States.

3          Rhett stated that, after crossing the border, he was to drive the vehicle and trailer to Temecula

4    and park them at a gas station parking lot off of the I-15 and California Oaks. Rhett claimed he did not

5    know his passenger. He claimed to have observed the trailer get loaded and unloaded with building

6    materials. Rhett admitted he was suspicious but denied having knowledge of the marijuana in the trailer.

7    "Jen's" direct connect telephone number was obtained from Defendant Rhett's cellular telephone. The

8    interview concluded at approximately 1:54 a.m., after Rhett requested to consult with an attorney.

9          **D.    Janet Bernice Forbes' Post-_Miranda_ Statement**

10         At approximately 3:00 a.m. on September 24, 2007 Defendant Janet Bernice Forbes was

11   interviewed in English by ICE Special Agent Duff and witnessed by Special Agent Alva. Defendant

12   Forbes stated that she had been unemployed for four years and that she is transient but has a San Diego

13   mailing address, which she provided. Forbes had $6.00 in her possession. Defendant was read her

14   _Miranda_ rights in English, acknowledged she understood her rights and waived them orally and in

15   writing before providing a videotaped statement.

16         Forbes stated that she was on methadone for heroin addiction and that she frequents Tijuana

17   often to receive her methadone treatments. She claimed that, on the morning of her arrest, she went to

18   Tijuana, Mexico to receive one of her treatments. She stated that, after receiving her treatment, she was

19   approached by "Felipe," who offered to pay her $500 to be a passenger in a vehicle that was to cross

20   illegal aliens into the United States. She stated that she was picked up by a taxi and driven to a house

21   in Colonia Libertad, Tijuana, Mexico. Upon her arrival, she observed approximately six to eight people

22   and met Defendant Rhett there. She stated that she spent approximately twenty minutes at the house

23   and then left with Rhett and an unknown Hispanic male named "Jimmy." She stated that they traveled

24   approximately 10-15 minutes to a gas station possibly in Rosarito, Mexico, where the white F-250 and

25   trailer were located. Forbes stated that Defendant Rhett told her he had made seven previous trips across

26   the border but that this was his first time working for this family.

27         Upon receiving the F-250 and trailer, Rhett got into the vehicle with her and Jimmy; Jimmy rode

28   with them for a little while until Jimmy told Rhett that it was time for Jimmy to get out. Forbes stated

1  that Defendant Rhett was receiving numerous Nextel calls from a woman identified as "Jen." Forbes

2  said "Jen" was requesting that Rhett call her back after they crossed the border. While they were in line

3  to enter the United States at the port of entry, Jen was calling Rhett every two minutes. She also claimed

4  to have heard Jen tell Rhett that he needed to move over a few lanes to cross or they would be sent to

5  secondary; they were, however, unable to change lanes because of the trailer. Forbes said that Rhett told

6  her that the previous time he crossed he needed help from the previous female passenger to lower the

7  trailer gate.

8      Defendant Forbes claimed she thought she was transporting undocumented aliens and believed

9  she would receive her $500 payment in Mexico. She denied knowledge of the marijuana and the

10  interview concluded at approximately 4:00 a.m.

11      **E.    Defendant's Criminal History**

12      Defendant has a lengthy criminal history, including multiple prior arrests and/or convictions for

13  narcotics related offenses. On October 19, 2000 Defendant Rhett was convicted in the 299th District

14  Court in Austin, Texas of a felony intoxicated assault with a vehicle/serious bodily injury in violation

15  of Texas Penal Code Section 49.07 and was sentenced to 10 years in jail; his probation was subsequently

16  revoked in January 2003 when he was sentenced to 4 years in jail. Defendant Rhett also has a May 2001

17  misdemeanor conviction for possession of a controlled substance in Travis County, Texas in violation

18  of Texas Health & Safety Code Section 481.119(b). In addition, on January 28, 2003, Defendant Rhett

19  was convicted of violating Texas Penal Code Section 22.01(A)(1), a Class A misdemeanor assault

20  causing bodily injury. On September 24, 1999, Defendant Rhett was convicted of a misdemeanor

21  assault/family violence and sentenced to 45 days in jail.

22                                  **III.**

23                              **WITNESSES**

24      The United States expects to call the following witnesses, although it reserves the right to change

25  the order of these witnesses, substitute witnesses, and add or omit one or more witnesses.

26      1.    Daniel Duff, Immigration and Customs Enforcement

27      2.    Christian Alva, Immigration and Customs Enforcement

28      3.    Mel Selga, Immigration and Customs Enforcement

| | |
|---|---|
| 1 | 4. | Manuel Fontanilla, Customs and Border Protection |
| 2 | 5. | Joseph Aguilar, Customs and Border Protection |
| 3 | 6. | Jan Everett, Customs and Border Protection |
| 4 | 7. | John Tobin, Customs and Border Protection |
| 5 | 8. | Gary Goldberg, Senior Forensic Chemist |
| 6 | 9. | Joseph DiMeglio, Immigration and Customs Enforcement |
| 7 | 10. | Lawrence Fanning, Customs & Border Protection |
| 8 | 11. | Eveleen Cabrera, Immigration and Customs Enforcement |
| 9 | 12. | Steve Rollins |
| 10 | 13. | Christopher Jay Winger |
| 11 | 14. | Janice Forbes |

**IV.**

**LEGAL ISSUES**

**A.    ELEMENTS OF THE CHARGED OFFENSES**

**1.    21 U.S.C. §§ 952 & 960, Importation of a Controlled Substance**

The United States must prove beyond a reasonable doubt that:

    1)    Defendant knowingly brought marijuana into the United States; and

    2)    Defendant knew that it was marijuana or some other prohibited drug.

9th Cir. Crim. Jury Instr. 9.27 (2003).

**2.    21 U.S.C. § 841(a)(1), Possession of a Controlled Substance with Intent to Distribute**

The United States must prove beyond a reasonable doubt that:

    1)    Defendant knowingly possessed marijuana or some other prohibited drug; and

    2)    Defendant possessed it with the intent to deliver it to another person.

9th Cir. Crim. Jury Instr. 9.13 (2003). It does not matter whether Defendant knew that the substance was marijuana. It is sufficient that Defendant knew that it was some kind of prohibited drug. Id.

With regard to possession, the Government notes that possession may be actual or constructive, and it may be proved by direct or circumstantial evidence. See United States v. Magallon-Jimenez, 219 F.3d 1109, 1112-1113 (9th Cir. 2000). Moreover, a defendant's mere possession of a substantial

1  quantity of a controlled substance may show that the defendant knowingly possessed the substance. See

2  United States v. Diaz Cardenas, 351 F.3d 404, 407 (9th Cir. 2003)(holding that jury could infer

3  knowledge when an individual is the driver and sole occupant of a vehicle containing 9.48 pounds of

4  methamphetamine (4.31 kilograms) and 17.65 pounds of cocaine (8.02 kilograms) concealed in the air

5  bag of the vehicle); United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir. 1989) (finding 2.5

6  kilograms of cocaine sufficient to show knowledge and intent to distribute and noting that a secret

7  compartment within a vehicle used to conceal illegal substances can raise an inference concerning

8  knowledge of the substance).

9       Knowledge may also be proved by reasonable inferences from the high street value of the

10  narcotics. See United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994) ("DEA agents can testify as

11  to the street value of narcotics, . . . and counsel can argue reasonable inferences from it") (citation

12  omitted); United States v. Golden, 532 F.2d 1244, 1247 (9th Cir.1976) (holding that "value of the heroin

13  found in the bags was relevant to both appellants' knowledge of the presence of the heroin and intent

14  to distribute"); Gaylor v. United States, 426 F.2d 233, 235 (9th Cir. 1970) (testimony as to the selling

15  price of cocaine was relevant to issue of knowledge, since it tended to refute "the possibility that a

16  stranger could have placed such a valuable cargo in a vehicle in the hope that the vehicle could be

17  followed and the cocaine later recovered in the United States").

18       With regard to distribution/delivery, the United States may prove the "intent to deliver" element

19  based on the following: a large quantity of contraband (United States v. Diaz Cardenas, 351 F.3d at

20  407); the manner in which the controlled substance was packaged (United States v. Glenn, 667 F.2d

21  1269, 1292 (9th Cir. 1982)); and the street value of the narcotics (United States v. Davila-Escovedo, 36

22  F.3d 840, 843 (9th Cir. 1994)); United States v. Savinovich, 845 F.2d 834, 838 (9th Cir.  1988)

23  (evidence of $100,000 street value of cocaine was relevant to proving defendant's intent to distribute);

24  United States v. Ramirez-Rodriguez, 552 F.2d 883, 885 (9th Cir. 1977) (evidence of resale value of drug

25  probative of intent to distribute).

26       **B.    THE COURT SHOULD PERMIT EXPERT TESTIMONY
            FROM GOVERNMENT AGENTS**

27

28       If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining

a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question.

1   Fed. R. Evid. 702.  The trial court has broad discretion to admit expert testimony.  See e.g.,

2   United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995).  An expert may base his opinion on hearsay

3   or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by

4   experts in the field. Fed. R. Evid. 703.  In addition, an expert may provide opinion testimony even if

5   it embraces an ultimate issue to be decided by the trier-of-fact.  Fed. R. Evid. 704.

6                      **1.    Value of the Marijuana and Distributable Quantity**

7           The United States expects to present the testimony of an agent who will testify as an expert

8   regarding the wholesale and street dollar value of the marijuana seized from the vehicle driven by

9   Defendant. The expert will testify that the quantity of contraband seized from Defendant was far greater

10  than a consumer would possess for personal use.  The value testimony will focus on the wholesale and

11  street values of the contraband, figures which have relevance to Defendant's intent to distribute.  See

12  Davila-Escovedo, 36 F.3d at 843 ("A jury may infer intent to distribute from the quantity and value of

13  the drug possessed").  The Ninth Circuit has upheld the admissibility of expert testimony as to the

14  wholesale and retail value of drugs.  See United States v. Mendoza-Paz, 286 F.3d 1104, 1112-1113 (9th

15  Cir. 2002).

16          It is expected that the expert will base his opinions on his experience investigating these types

17  of cases, as well as his hands-on experience interrogating drug traffickers, debriefing confidential

18  informants and discussing intelligence information with other agents.  The Government has already

19  provided defense counsel with notice of its intent to call a value expert.   Consistent with the

20  requirements of Fed. R. Crim. P. 16, the Government has provided Defendant with the name of its expert

21  and a summary of the projected nature and scope of, as well as the basis for, this expert's testimony in

22  anticipation of trial. The Government has also forwarded a copy of the expert's résumé.  Accordingly,

23  no basis exists for excluding the Government's expert testimony regarding the value of the contraband

24  and that the amount found in the vehicle was a distributable quantity.

25                      **2.    Structure Evidence**

26          The Government does not intend to introduce expert testimony regarding structure in its case-in-

27  chief.  If the Government intends to present such evidence in rebuttal, it will do so consistent with

28  United States v. Vallejo, 237 F.3d 1008, as amended, 241 F.3d 1150 (9th Cir. 2001).

1

2          **3.**      <u>Blind Mule Testimony</u>

3        The Government may, however, elicit testimony that drug traffickers generally do not entrust

4 large quantities of drugs to unknowing couriers or "blind mules." <u>See</u> <u>United States v. Murillo</u>, 255 F.3d

5 1169, 1176-77 (9th Cir. 2001)(unknowing drug courier testimony admissible in drug possession case

6 to attack defendant's defense that he was "simply an unknowing courier"); <u>United States v. Campos</u>,

7 217 F.3d 707, 712 (9th Cir. 2000)(unknowing drug courier testimony was admissible in an importation

8 case). Expert testimony that drug traffickers do not entrust large quantities of drugs to unknowing

9 transporters is not drug courier profile testimony. <u>See</u> <u>United States v. Cordoba</u>, 104 F.3d 225, 230 (9th

10 Cir. 1997).

11          **4.**      <u>The Substance Seized Was Marijuana</u>

12        Absent a stipulation, the Government intends to introduce the testimony of a Senior DEA

13 Chemist in this case. It is expected that this chemist will testify that he performed various tests on the

14 substance seized from the vehicle driven by Defendant. The chemist will testify, <u>inter alia</u>, that the

15 results of these tests indicated the presence of marijuana. This chemist will base any expert opinions

16 on his background, education, and experience, along with his knowledge and use of the accepted

17 scientific methods used when testing unknown substances for the presence of controlled substances.

18        Consistent with Fed. R. Crim. P. 16, the Government has provided Defendant with the name of

19 its DEA Chemist expert and a summary of the projected nature and scope of, as well as the bases for,

20 this expert's testimony. The Government has forwarded a copy of the expert's resumé. Accordingly,

21 no basis exists for excluding the Government's expert testimony that the substance seized from the

22 vehicle was, in fact, marijuana.

23

24

25

26

27

28

1                                         **V.**

2                                    **EXHIBITS**

3          The Government will provide a complete exhibit list prior to trial.  The Government will make

4    available to Defense counsel and its investigator the Government's exhibits for trial to expedite

5    proceedings.  The Government further requests an opportunity to examine Defendant's exhibits before

6    trial.  Presently, the Government intends to offer into evidence the following:

7          1.      Photographs of the F-250 and attached trailer (interior and exterior)

8          2.      Photographs of the marijuana

9          3.      Brick of marijuana/samples

10         4.      Value Chart showing wholesale and retail value of marijuana

11         5.      Cell phone of Defendant Rhett

12         6.      Photographs of the San Ysidro Port of Entry

13         7.      Certified Vehicle Registration Documents

14         8.      California Identification Card for Stephen Rhett

15         9.      Incomplete vehicle registration documents for F-250 and trailer

16         10.     Referral slip

17         11.     Black backpack

18         12.     Photographs of backpack

19         13.     Photograph of marijuana field test on substance in backpack

20                                        **VI.**

21                                   **VOIR DIRE**

22         The Government requests that the following voir dire questions be addressed to the jury panel

23    in addition to the Court's standard jury questions:

24         1.      The Court will instruct you about the law.  Will you follow the law as given by the Court

25                 and disregard any idea or notion you have about what the law is or should be?

26         2.      The Government will be calling witnesses employed by the Department of Homeland

27                 Security, Customs and Border Protection and Immigration and Customs Enforcement.

28                 Does anyone have family members or close friends who work, or have worked, for these

agencies? Would that prevent you from being fair and impartial? Does anyone have any negative views of these agencies that would prevent you from being fair and impartial?

3.     Has anyone had an unpleasant or negative experience with any law enforcement personnel? Would that cause you to be biased against law enforcement?

4.     Has anyone ever had any disputes with any agency of the United States Government? If so, please describe.

5.     Have you or any relatives or close friends ever been accused of, or charged with, a similar crime?

6.     Has anyone had any training in the law? If so, please explain.

7.     Will you be able to put aside any feeling of sympathy or pity for the defendant(s) when deciding the facts of this case?

8.     Does everybody understand that a defendant is entitled to a fair trial? Does everybody understand that the United States is also entitled to a fair trial?

9.     Does anybody have any moral or religious reservations that might prevent him/her from standing in judgment of other human beings?

10.    The defendant in this case is charged with importation of a controlled substance. Does anybody have strong feelings or opinions about U.S. narcotics laws that would prevent him/her from viewing the evidence impartially?

11.    The law requires the government to prove its case against the defendant beyond a reasonable doubt. If you are selected, would you want the government to prove its case by a higher standard of proof, say beyond any possible doubt?

12.    Certain events in this case took place at the San Ysidro Port of Entry. Have any of you been sent to secondary inspection or had your vehicle searched at the San Ysidro or another port of entry? Have any of you had any positive or negative experiences at the San Ysidro or another port of entry? Do you believe that this experience might prevent you from viewing the evidence in this case impartially?

13.    If you are instructed by the Court at the end of this trial that more than one person can be in possession of something, would you have any difficulty following that instruction?

14.   Is anyone here involved in criminal defense work?  Does anyone have any friends or family members who are involved in criminal defense work?  Is anyone here involved in law enforcement? Does anyone have any friends or family members who are involved in law enforcement?

15.   Regardless of any position you may have on the legalization or criminalization of marijuana, if you become a juror in this federal trial, will you be able to follow the federal law of the United States as it presently stands and as the judge instructs you regarding the criminal importation and possession of marijuana?

## VII.

## JURY INSTRUCTIONS

Proposed jury instructions will be filed under separate cover.  The United States reserves the right to submit additional instructions at the Rule 30 conference.

DATED: January 8, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney


*Lawrence A. Casper*
LAWRENCE A. CASPER
Assistant United States Attorney

14                          07cr2956-LAB

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR2956-LAB |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| STEPHEN FRANCIS RHETT (1), JANET BERNICE FORBES (2) | ) | |
| Defendants. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Lawrence A. Casper, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of:
UNITED STATES' TRIAL MEMORANDUM

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Michelle Betancourt, Federal Defenders, Inc.**
**Attorney for defendant, Stephen Francis Rhett**

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:
1. **None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 8, 2007.

s/ Lawrence A. Casper
LAWRENCE A. CASPER